## Fouché's Estate.    Atkinson's Appeal.

*Will—Form of—Nuncupative will.*

On November 7, 1890, six days before his death, testator declared before his wife and children that he was about to make his will by word of mouth; that he desired them to witness that he left everything to his wife. On the same day he wrote on the blank page of a printed notice the following instrument: "Nov. 7, 1890. Nuncupative by word of mouth. My will was maid on the above date: everything left to my dear wife, Mary E. Fouché; all my real and personal estate and everything I own at the time of my death.  William Fouché." *Held,* that the writing was a valid will.

Argued Jan. 29, 1892.   Appeal, No. 114, Jan. T., 1892, by
Edwin C. Atkinson, guardian, from decree of O. C. Phila.
Co., directing the register of wills to admit to probate a cer-
tain writing as the will of William F. Fouché, deceased.   Be-
fore PAXSON, C. J., STERRETT, McCOLLUM, MITCHELL and
HEYDRICK, JJ.

Appeal from the refusal of the register of wills to admit a
paper to probate as a will.

ASHMAN, J., filed the following opinion:

" On the morning of November 7, 1890, six days before his
death, and when he was in declining health, the decedent, in
the presence of his wife and children, declared that he was
about to make his will by word of mouth ; that he desired them
to witness that he left everything to his wife after his death
and that she could do with it as she pleased.   Immediately be-
fore this interview he had explained to one of his sons, who
was very deaf, the meaning of a nuncupative will, and, appar-
ently in order to be certainly understood, had shown the son a
paper on which he had already written the word 'nuncupa-
tive,' and to which he proceeded to add as the definition 'by
word of mouth.'   A few days after his death, the writing now
offered as his will was found among other papers which were
taken from his desk.   It was upon the identical paper which
had been exhibited to the son, the words ' nuncupative by word
of mouth ' not having been erased.   The paper read as follows :

"November 7th, 1890.

" Nuncupative by word of mouth my will was maid on
the above date, everything left to my dear wife, Mary W.
Fouché, all my real and personal estate and everything I own
at the time of my death.

" WILLIAM W. FOUCHÉ.

" Probate was refused on the ground that this was not a valid
testament.   The reasoning by which it is sought to uphold this
ruling is highly ingenious, but of necessity highly technical ;
and for the latter cause should be adopted cautiously, if at all,
in determining the intent of a testator who knew nothing of
technical terms.   It assumes at the outset that the decedent
had actually no purpose whatever in writing the paper ; or, as
counsel states it, he scrawled it to while away a weary hour ;

the basis of this assumption was that the testator had used the blank page of a printed notice, and on a fold of the paper had made some calculations in figures. However it may be with counsel, this is not the spirit in which a court may proceed to test the validity of the instrument in the nature of a will. If it may find that the testator wrote simply for amusement because his pretended will was upon note paper, it may also find that he wrote only as a joke because his spelling was grotesque. It would be well, perhaps, if all wills were engrossed on parchment and drafted by lawyers; but the circumstances under which many of them are prepared preclude any nice selection of stationery or counsel. Certainly it would be cruel if a testator, in his last hours, should be harassed with the thought that his final wishes as to the disposal of his estate would depend for their fulfillment upon the size and quality of the paper on which his will was written. We pass over the next argument which, however, was not pressed with fervor, that the writing was void as a will, because the testator had not signed his name at the foot of the figures. These figures had no more to do with the writing than the circular on the reverse of the paper, and he was no more called upon to sign the one than the other. The point upon which the contestants mainly rested was that the utmost effect of the writing was to serve as a republication of a nuncupative will, and that the latter was void and therefore incapable of revival. It is, at least, open to debate whether a will which is void in its inception may not be made good by a codicil duly executed which distinctly affirms it: Druce v. Denison, 6 Ves. 397; but is it within the bounds of credulity that a testator who has made what he deems a complete will in the morning should think it necessary to formally republish it in the afternoon of the same day, or that, having formed such a resolve, he should recite anew all the provisions of the anterior will? The contrary supposition, which the evidence here raises into a certainty, is that the decedent intended by this writing, not a republication but a new will. He had cut out from newspapers and had placed in his desk, along with the will, various slips descriptive of short and eccentric wills which had been admitted to probate, and he had also kept by him a pamphlet giving directions for drawing wills and defining the law as to nuncupative wills. It was

taken for granted by the contestants themselves that he had patterned his will after these specimens, and that he knew the character of unwritten wills. If the field of conjecture is to be laid open for one purpose we may pursue it for another, and, assume that having learned that a nuncupative will must be reduced to writing within six days after the testator's death, the decedent had anticipated that duty and had himself written out his testament. Or he may have concluded that his oral will was void because it was not made in the extremity of his sickness, or that, even if valid, it would not carry his real estate ; and he thereupon, and, we think, wisely, committed his intentions to writing. But there is no need either for evidence of what the testator had previously declared was his purpose, nor for conjecture as to what he afterwards intended. The writing itself is before us, and the sole inquiry is : Does it contain the requisites of a valid will ? Is it signed by the testator at the end thereof, does it take effect at his death, and does it make an intelligent disposition of his property ? To all of these questions, we believe there can be but one answer. Its form, or rather its want of form, is nothing : Frew v. Clarke, 80 Pa. 170. That it speaks in the past tense, and not in the present is nothing : Black v. Tobling, 1 L. Rep. 685 ; Williams on Executors, vol. I, p. 138, and that the testator called it nuncupative is also nothing. A promissory note or a deed, provided it is meant to operate at the death of the maker or grantor, may be a good will, no matter by what name the instrument may have been described : Turner v. Scott, 51 Pa. 126 ; Patterson v. English, 71 Pa. 458. This paper, so far from depending upon extrinsic testimony to explain or to enforce it, is absolutely complete in itself, and is to be upheld in the face of all adverse criticism as to its form upon the principle laid down in Boyd v. Bunting, 210, that ' wherever a party has the power to do a thing—statutory provisions being out of the way—and means to do it, the instrument he employs shall be so construed as to give effect to his intention.' This contest would have been avoided if it had been borne in mind that whether the testator had executed one will or many, nuncupative or written, valid or invalid, was a thing of no measurable consequence, if the paper which he finally executed and which is now under scrutiny conformed to statutory requirements

and expressed his last intentions.   That it did both we have no manner of doubt.   The appeal is sustained and the record recommitted to the register with direction to admit the instrument to probate."

*Error assigned* was the order sustaining the appeal.

WILLIAM C. HANNIS, for appellant.

JOHN SCANLAN, for appellee.

PER CURIAM, February 8, 1892.

This is an interesting case, but it is so intelligently discussed by the learned judge of the orphans' court that nothing remains to be added.   We affirm the decree for the reasons given by him, and dismiss the appeal at the costs of the appellant.