IN RE NOYES' ESTATE.   NOYES, RESPONDENT, *v.* GERARD,
APPELLANT.

(No. 2,734.)

(Submitted December 14, 1909.   Decided December 24, 1909.)

[106 Pac. 355.]

*Wills—Probate—Construction—Instruments Constituting—Execution — Intention of Testator — How Determined — Holographic Will.*

Wills—Instruments Constituting—Construction—Intention of Testator.

1.   While paper, not of a testamentary character, will be construed with one having that character, where the latter has by appropriate reference to the former incorporated it within itself, the reference must be such a description of the paper by the testator as to manifest his intention to incorporate it in, and make it a part of, his will.

Same—Letter—Intention of Testator.

2.   A letter written by one who had imperfectly executed two wills, addressed to the chief beneficiary thereunder, which did not refer directly or indirectly to any paper whatever, and which merely recited some of the provisions of the previous instruments for the purpose of conveying information to the beneficiary of the writer's solicitude in her behalf, and not to ratify anything already done, or to republish either of the other wills, did not, together with both or either of them, constitute a valid will.

Same—Intention of Testator—How Determined.

3.   In order to make an instrument testamentary in character, it must show that it was written *animo testandi;* and where the purpose of the testator is left in doubt by the form of expression used, his intention, which must clearly appear, must be arrived at by considering it in the light of the surrounding circumstances.

Same—Letter—Holographic Will—Proper Denial of Probate.

4.   *Held,* that the letter referred to in paragraph 2, *supra,* written by decedent at a time when he was not *in extremis* and after he had already executed what he supposed was a valid will in the addressee's favor, when examined in the light of the surrounding circumstances, did not disclose an intention to make a new will; and hence that the district court properly denied it probate as a holographic will, though entirely written, dated and signed by decedent.

*Appeal from District Court, Yellowstone County; Sydney Fox, Judge.*

IN THE MATTER of the estate of Horace A. Noyes, deceased. J. S. Noyes, as plaintiff, contested a writing offered by Sarah Gerard, defendant, for probate as the last will of the deceased.

From a judgment denying probate, defendant appeals. Affirmed.

After final judgment in the two causes under the same title as this, (*ante*, pp. 178, 190, 105 Pac. 1013, 1017), the defendant applied to the district court of Yellowstone county for an order admitting to probate the following writing as the last will and testament of Horace A. Noyes, deceased:

"Thermopolis, Wyo., Nov. 25, '08.

"Mrs. Sarah Gerard,

"Laurel, Mont.:

"Inclosed please find check made to Paul but for you for $10.00. I am not as well as when I came over here. I don't know whether I will ever get well, but it looks bad now. If I never get back alive E. L. Fenton will take charge of affairs and settle everything and what is left will be yours, but you can neither rent or sell any of it to your relatives, not even your boys, if you should attempt to do what I have told you you could not do the property will be taken from you and given to my brother and sisters. I will stay here for sometime to come, so if you should write it will find me alright. I must close, as I am so weak I can hardly sit up.

"Yours as ever,

"H. A. Noyes."

John S. Noyes, the plaintiff, having instituted his contest, the controversy was submitted to the court without a jury upon an agreed statement of facts, which, in addition to the statement found at pages 181 and 190, *ante* (pages 1013 and 1017 of 105 Pac.), embodies substantially the following: That application for the probate of the instrument mentioned in that statement as the last will and testament of Horace A. Nóyes, deceased, had been made and denied; that like application for probate of another instrument, referred to in the petition as "Exhibit B," had also been denied; that on November 25, 1908, Horace A. Noyes was

at Thermopolis, Wyoming, where he had gone for the benefit of his health, and while there had written, in the form of a letter, entirely in his own handwriting, the paper offered for probate, and had mailed it to defendant at Laurel, Montana, postage prepaid; that the writing had been received by her and had remained in her hands to the time of Noyes' death, whereupon it had been deposited, with the other papers mentioned, in the hands of the clerk of the district court; that the other writings had been left by Noyes with E. L. Fenton, at Laurel, Montana, for safekeeping, prior to his mailing the said writing to defendant; that these latter two writings were the only instruments of a testamentary character left by deceased with Fenton, or any other person, and were, at the time of his death, in the possession of Fenton; and that Noyes, after writing the said paper, "did get back alive" to Laurel, Montana, where he remained until his death, on January 16, 1909; but that he never recovered from the disease from which he had been suffering for three years and which finally resulted in his death. The writing referred to as "Exhibit B" is the following:

"Know all men by these presents: That I, Horace A. Noyes, of Laurel, Yellowstone county, state of Montana, being of sound mind and possessed of all my faculties, do this 4th day of May, A. D. 1907, will all my real estate, personal property and possessions as follows, to-wit: That all of the said property real and personal I hereby will to Mrs. Sarah Gerard who is now living in my dwelling-house on lot (13) in block two (2) in the town of East Laurel, Mont., and the said Sarah Gerard shall pay to Mrs. I. M. Gregory of New York, Pearl a daughter of Mrs. Bina C. Latham, Mrs. F. G. N. Van Slyck of Riverside, Cal., Hattie E. Alexander and J. S. Noyes (sisters and brother) the sum of ten dollars each. The said Sarah Gerard is to pay all my debts at the time of my death, and to bury my body in Billings, Montana.

"It is a part of this will and testament that the said Sarah Gerard shall never under any circumstances, rent, lease or sell any of the property that she shall receive by reason of this will, to any of her relatives [relatives].

"And I further will that Edwin L. Fenton of Laurel, Montana, act as my administrator.

"In case the said Sarah Gerard should rent, lease or sell any of the property to any of her relatives then this will shall be null and void and the property would all revert to my natural heirs.

"Witness my hand and seal the day and year first above written.                                    H. A. Noyes.

"Witnesses:

"John W. Conant.

"John W. Klamer."

The questions submitted to the district court for decision were: (1) Does the writing made at Thermopolis, Wyoming, together with either one or both of the other instruments mentioned, constitute a valid will? And (2) is said writing alone a valid holographic will? The court in its decision answered both of these questions in the negative, and judgment was entered accordingly. The appeal is from the judgment.

*Mr. W. M. Johnston* submitted a brief in behalf of Appellant, and argued the cause orally.

It is well settled that a letter may be admitted to probate as a will. (See 1 Williams on Executors, pp. 148, 149, and note 40; Page on Wills, sec. 58.) Conceding, though not admitting, that the lower court was right in refusing to admit to probate the letter alone as the will of the deceased, nevertheless it would clearly appear from the authorities that this letter, entirely dated, written and signed by the testator, was sufficient to operate as a republication of either of the wills in question. (See *Barney* v. *Hays,* 11 Mont. 99, 571, 28 Am. St. Rep. 495, 27 Pac. 384, 29 Pac. 282; *In re Skerrett,* 67 Cal. 485, 8 Pac. 881; *In re Plumel's Estate,* 151 Cal. 77, 121 Am. St. Rep. 100, 90 Pac. 192.) Instruments referred to in a will need not be exhibited to the witnesses. (*Willey's Estate,* 128 Cal. 1, 60 Pac. 471; see, also, note to *Bryan's Appeal,* 68 L. R. A. 353.) Extrinsic evidence may be resorted to in order to determine what

is meant or referred to. (*Smith* v. *Holden,* 58 Kan. 535, 50 Pac. 447; note to *Bryan's Appeal, supra.*)

In view of the repeated attempts made by the deceased to make a good and valid will bequeathing practically all of his property to Mrs. Gerard, it seems absolutely useless to note the objection that the letter in question, if a will, is a conditional or contingent one. In other words, that Mr. Noyes meant Mrs. Gerard to have his property in case he never returned alive from Thermopolis, but that if he did return alive, she was then not to have any of the property. The courts have construed many such wills, and the rule is that where a contingency is stated and it may be inferred by the court that it is stated as giving reasons for making the will, it will be so construed, and will not be construed as a contingency upon which the will is to take effect. (*Dougherty* v. *Holscheider,* 40 Tex. Civ. App. 31, 88 S. W. 1113; *In re Forquer's Estate,* 216 Pa. 331, 66 Atl. 92; *Eaton* v. *Brown,* 193 U. S. 411, 24 Sup. Ct. 487, 48 L. Ed. 730; *Redhead* v. *Redhead,* 83 Miss. 141, 35 South. 761; *Buffington* v. *Thomas,* 84 Miss. 157, 105 Am. St. Rep. 423, 36 South. 1039; *Damon* v. *Damon,* 8 Allen (Mass.), 192.) Page on Wills, section 63, gives a number of examples of wills held not contingent, which support the contention of appellant that the letter in question is not a contingent or conditional will.

It is also contended that the letter in question was not written by the deceased *animus testandi.* The courts hold that it is not necessary for one to realize that he is writing his will if the letter clearly expresses the intention and desires of the testator. (See *Alston* v. *Davis,* 118 N. C. 202, 24 S. E. 15; *Milam* v. *Stanley,* 33 Ky. Law Rep. 783, 111 S. W. 296, 17 L. R. A., n. s., 1126, and note.) The necessary *animus testandi* may exist even though the deceased did not know he was writing a will. It depends on the real intention of the maker as deduced from the instrument, and from the facts and circumstances. (Page on Wills, secs. 44, 58, 59, and cases cited; *In re Stumpemhousen's Estate,* 108 Iowa, 555, 79 N. W. 376; *Smith* v. *Holden,* 58 Kan. 535, 50 Pac. 447; *Webster* v. *Lowe,* 107 Ky. 293, 53 S. W. 1030; *Mitchell* v. *Donohue,* 100 Cal. 203, 38 Am. St. Rep. 279, 34 Pac.

614; *Appeal of Knox,* 131 Pa. 220, 17 Am. St. Rep.798, 18 Atl.
1021, 6 L. R. A. 353; *In re Fouche's Estate,* 147 Pa. 395, 23
Atl. 547.)

Waiving any question as to the validity of the two wills ex-
ecuted by deceased, it seems that it must be admitted that the
letter in question conformed to statutory requirements and ex-
pressed his last intentions. It was entirely written, dated and
signed by the testator. The execution was perfect. The sole
question remains, Did it express the intentions of Horace A.
Noyes viewed by itself alone? Considered in the light of the
facts and circumstances admitted in the agreed statement, there
can be no question but that he so intended.

In behalf of Respondent, there was a brief by *Mr. Chas. A.
Taylor,* and *Mr. Harry L. Wilson,* and oral argument by *Mr.
Wilson.*

The deceased having no intention of making a will when he
wrote the letter in question, it is not testamentary in its char-
acter, and therefore cannot be admitted to probate. (See *In
re Richardson's Estate,* 94 Cal. 63, 29 Pac. 484, 15 L. R. A.
635; *In re Meade's Estate,* 118 Cal. 428, 62 Am. St. Rep. 244,
50 Pac. 541.) In the construction of wills effect must be given
to the intention of the testator, if that can be discovered and
is consistent with the rules of law. But the intention must be
expressed, and with legal certainty, otherwise the title of the
heir at law must prevail; for conjecture can never be made to
supplant what the testator has failed to sufficiently express on
the face of the will. (*Sutherland's Exrs.* v. *Snydor,* 85 Va.
28, 6 S. E. 480; *Wootton* v. *Redd's Exrs.,* 12 Gratt. (Va.) 196;
*Hatcher* v. *Hatcher,* 80 Va. 169; *Smith* v. *Bell,* 6 Pet. 68, 8 L.
Ed. 322; *Combs* v. *Jolly,* 3 N. J. Eq. 625; *Lungren* v. *Swartz-
welder,* 44 Md. 482; *Swett* v. *Boardman,* 1 Mass. 258, 2 Am.
Dec. 16.)

We do not contend that the letter in question is a conditional
or a contingent will. Upon the contrary, as hereinbefore indi-
cated, we insist that it is not a will of any kind or character.
But if the court should take the view that the letter, standing

:alone, and considered in the light of its own language. or in
·connection with the surrounding circumstances, is to any ex-
·tent testamentary in character, then we submit that the most
that can be said of it as a "will" is that it is conditional and
·contingent in its terms, and the failure of the contingency to
happen renders it inoperative. (See *Todd's Will,* 2 Watts &
S. (Pa.) 145; *Hamilton's Estate,* 74 Pa. 69; *Morrow's Appeal,*
116 Pa. 440, 2 Am. St. Rep. 616, 9 Atl. 660; *Maxwell* v. *Max-
well,* 3 Met. (60 Ky.) 101; *Dougherty* v. *Holscheider,* 40 Tex
·Civ. App. 31, 88 S. W. 1113; *Dougherty* v. *Dougherty,* 4 Met.
(61 Ky.) 25; *Magee* v. *McNeil,* 41 Miss. 17, 90 Am. Dec. 354;
*Robnett* v. *Ashlock,* 49 Mo. 171.)

The letter in question, not being testamentary in character
:and, therefore, neither- a will nor a codicil, it cannot be con-
tended that the witnessed instrument should be received for
probate in connection with the letter on the ground of incor-
poration by reference. (*Bryan's Appeal,* 77 Conn. 240, 107
Am. St. Rep. 34, 58 Atl. 754, 68 L. R. A. 353.) The intention
·of the testator to incorporate the paper or ·document in ques-
tion must clearly appear from the will, mere reference thereto
without intention to incorporate being insufficient. (*Myers'
Estate,* Myr. Prob. (Cal.) 205; *Magoohan's Appeal,* 117 Pa.
238, 2 Am. St. Rep. 660, 14 Atl. 816; *Grabill* v. *Barr,* 5 Pa. 441,
47 Am. Dec. 418; *Lucas* v. *Brooks,* 18 Wall. (U. S.) 436, 21 L.
Ed. 779.) "The doctrine of incorporation by reference can-
not be invoked for the purpose of evading the statute of wills
and validating a will which is not executed and attested in con-
formity therewith." (*Matter of Andrews,* 162 N. Y. 1, 76
Am. St. Rep. 294, 56 N. E. 529, 48 L. R. A. 662; *In re Emmon's
Will,* 110 App. Div. 701, 96 N. Y. Supp. 506.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of
the court.

Section 4766, Revised Codes, declares: "Several testamentary
instruments, executed by the same testator, are to be taken and
·construed together as one instrument." And that this is done
is not infrequently the case. (*Estate of Murphy,* 104 Cal. 554,

38 Pac. 543.) "Of two modes of interpreting a will, that is to be preferred which will prevent a total intestacy." (Revised Codes, sec. 4772.) It will be noted, however, that these provisions of the statutes are rules of interpretation merely, and have nothing to do with the prerequisite steps which must be shown to have been taken in executing it, before any paper may be regarded as of a testamentary character. Until these appear to have been taken by the testator, the paper never assumes a testamentary character. It is a mere nullity. (*Estate of Noyes, ante,* p. 178, 105 Pac. 1013.) Two wills by the same testator, in the execution of both of which the statutory requirements have been met, must therefore be construed together, unless the former has been revoked by the testator as prescribed by the statute. (Revised Codes, secs. 4741, 4746, 4747.) So, also, a paper not of a testamentary character is to be construed with one having that character, whenever the latter has, by appropriate reference to the former, incorporated it within itself, thus giving it also a testamentary character. (*Barney* v. *Hayes,* 11 Mont. 99, 27 Pac. 384; 11 Mont. 571, 28 Am. St. Rep. 495, 29 Pac. 282; *In re Skerrett,* 67 Cal. 585, 8 Pac. 881; *Estate of Plumel,* 151 Cal. 77, 121 Am. St. Rep. 100, 90 Pac. 192.)

It having been heretofore determined that neither the paper, which may be designated as the "Fenton will," dated May 4, 1907, nor the one offered for probate as a holographic will, purporting to be dated February 23, 1903, is valid for any purpose (*ante,* pp. 178, 190, 105 Pac. 1013, 1017), the solution of the first question submitted for decision turns upon the answer to the inquiry: Does the Thermopolis letter contain such a reference to either or both of them as to require them, or either of them, to be regarded as a part of it? In the prosecution of this inquiry we are not aided by section 4736, Revised Codes, which declares: "The execution of a codicil, referring to a previous will, has the effect to republish the will, as modified by the codicil"—for the term "will" as used in it, clearly means a document which itself has testamentary character. At the same time the sufficiency of the reference is left open to inquiry to be determined by the facts of each particular case. The rule

which is recognized by the decisions may be stated thus: The·
reference must be such a description of the instrument in ques-
tion as to manifest the intention of the testator to incorporate·
it in, and make it a part of, the paper propounded. In *Allen*
v. *Maddock*, 11 Moore P. C. 427, 14 Eng. Rep., Full Reprint,.
p. 757, the testatrix had executed a paper beginning: "This is:
a codicil to my last will and testament. I bequeath to my faith-
ful servant," etc. It was not written upon the same paper
as the will referred to (an imperfectly attested paper), nor was
it attached to it nor found in the same depository. In dis-
cussing the character of the reference necessary, the court said:
"No doubt the rule of law is, as stated by Lord Eldon in *Smart*
v. *Prujean*, 6 Ves. 565, that 'an instrument properly attested,.
in order to incorporate another instrument, not attested, must.
describe it so as to be a manifestation of what the paper is,.
which is meant to be incorporated.' For this purpose it is neces-
sary that it should be so described as to leave no doubt in the·
mind of the judge, in the circumstances as they actually ex-
isted and are proved before him, that the paper referred to is·
the paper propounded." Parol proof was resorted to in order·
to identify the paper referred to, the court remarking that this
resort must be had in order that it might be made to appear·
what papers there were at the date of the codicil which would
answer the description therein.

The language employed in the statement of the rule in this,
case, and in *Smart* v. *Prujean*, as well as the discussion touch-
ing the admissibility of evidence in *Allen* v. *Maddock*, clearly
excludes the use of it for any other purpose than the identifi-
cation of a writing mentioned in the testamentary paper as
such and as then in existence. The rule as stated does not con-
template the introduction of proof to demonstrate that the lan-
guage used was intended to be a reference to some other·
instrument. The reference must be unmistakably the testator's.
The description of the paper referred to, if complete and def-
inite, dispenses with evidence to establish its identity. It is,
only when the description is incomplete that extrinsic evidence
may be resorted to; for in *Allen* v. *Maddock*, in this connec-·

tion, it is said: "A reference in a will may be in such terms as to exclude parol testimony, as where it is to papers not yet written, or where the description is so vague as to be incapable of being applied to any instrument in particular; but the authorities seem clearly to establish that where there is a reference to any written document, described as then existing, in such terms that it is capable of being ascertained, parol evidence is admissible to ascertain it, and the only question then is whether the evidence is sufficient for the purpose." So the rule is generally understood and applied. (*Dickenson* v. *Stidolf*, 11 Com. B. 341; *Brown* v. *Clark*, 77 N. Y. 369; *Estate of Skerrett, supra; Estate of Plumel, supra; Estate of Young,* 123 Cal. 337, 55 Pac. 1011; *Hobart* v. *Hobart*, 154 Ill. 610, 45 Am. St. Rep. 151, 39 N. E. 581; *Beall* v. *Cunningham*, 3 B. Mon. (Ky.) 390, 39 Am. Dec. 469; *Phelps* v. *Robbins*, 40 Conn. 250; *Bryan's Appeal*, 77 Conn. 240, 107 Am. St. Rep. 34, and notes, 58 Atl. 754, 68 L. R. A. 353; 1 Redfield on Wills, 4th ed., 261 *et seq.;* Schouler on Wills, 3d ed., secs. 281, 282; 30 Am. & Eng. Ency. of Law, 2d ed., 551.)

The Thermopolis letter does not refer either directly or indirectly to any paper whatsoever. In the absence of extrinsic evidence showing that Noyes had left the two imperfectly executed wills in the hands of Fenton, there is nothing to indicate that any testamentary paper was in existence anywhere. That some of the provisions of both wills are recited was clearly for the purpose of conveying information to the defendant of the solicitude of the testator in her behalf, and not to ratify anything already done or to republish either or both of the wills which he had theretofore attempted to execute. The district court therefore correctly answered the first inquiry in the negative.

The answer made by the district court to the second inquiry was, we think, also correct; for, eliminating the conditional feature of the writing, it seems clear, in the light of the surrounding circumstances, that it was not written *animo testandi;* that is, with the serious intention then in the author's mind that it should be probated as his will. "The rule is that no set form of expression is required. All that is necessary to make an

instrument testamentary is that it should show, when read in connection with surrounding facts and circumstances, a testamentary intention.'' (Page on Wills, p. 60; see, also, Redfield on the Law of Wills, 174; 1 Williams on Executors, 148; Schouler on Wills, 3d ed., sec. 273.) If the paper propounded is clearly of a testamentary character, it speaks for itself; but, if the intention of the testator is left in doubt by the form of expression used, then the intention must be arrived at by considering it in the light of the surrounding circumstances, and the intention must clearly appear. (*McBride* v. *McBride,* 26 Gratt. (Va.) 476.) The books abound in cases in which informal instruments have been, on the one hand, admitted to probate, or, on the other, held not to be testamentary in character. No rule can be stated that will apply to all cases. Each must be determined upon its own facts.

The Thermopolis letter is not, upon its face, clearly of a testamentary character. Judging from the expressions used in it, the purpose in the mind of the writer was merely to inform the defendant that he had already made provision for her, that Fenton would act as his executor, and to call her attention to the limitation imposed upon her with reference to her uses of the property which she was to receive. There is no expression in it intimating in any way that she was to regard it in any other light than she had regarded any other letter written by him, or that she should preserve it as of any value to her. To say the least, it is of doubtful import, and must be interpreted in the light of the attendant circumstances. In the light of the circumstances under which it was written, it seems clear that it was not intended to be a will. Though Noyes was then ill, he was not *in extremis.* He had already executed a will, as he supposed, and left it with Fenton, his executor. He refers to this fact and recites the main provisions of the instrument, assuming that Fenton would act as his executor, but does not use terms expressive of a present intention to appoint him his executor. That it was the result of a desire on the part of the writer merely to convey to the defendant the information

that he had already provided for her is as clearly the proper interpretation of it, as that by the loose expressions employed he intended to make a new will, and thus to change in entirely unimportant particulars one already supposed to have been executed with solemn formalities.

Under the rule declared by the statute, an instrument should be so construed as to prevent intestacy; yet courts may not declare a paper to be a testamentary disposition of an estate when it does not clearly appear that such was the intention of the person executing it. In the case of *In re Richardson's Estate,* 94 Cal. 63, 29 Pac. 484, 15 L. R. A. 635, the court considered a writing very similar to the one here involved, and held that it did not show a testamentary intention. In *Barney* v. *Hayes,* *supra,* it appeared that the testator had not already made provision for his wife, and had lodged with the attorney who had charge of the will a letter which clearly expressed his desire that she should have her share of his estate; even so, the decision should not be held controlling, except in cases where the facts and circumstances are substantially the same.

The judgment is affirmed.

*Affirmed.*

MR. JUSTICE SMITH concurs.

MR. JUSTICE HOLLOWAY: I dissent from the conclusion reached by the majority of the court, in so far as it holds that the letter written by Noyes from Thermopolis is not a valid holographic will.

1. It is conceded in the agreed statement of facts that the letter was entirely written, dated and signed by the hand of Noyes, and by this concession every requirement of our Codes relating to holographic wills must be held to have been fully met. The rules governing the interpretation of wills, as prescribed by the Codes, evidence an intention on the part of the legislature that, when one who is qualified to make a will complies with the formalities which the law deems necessary for the protection of property, the utmost liberality shall be exercised in interpreting his acts, to the end that his intention,

rather than the wishes of others, may be carried into effect, or, as was said in *Bond* v. *Brunting*, 78 Pa. 210: "Whenever a party has the power to do a thing (statutory provisions being out of the way) and the means to do it, the instrument he employs shall be so construed as to give effect to his intention."

With this rule in view, the courts have held that, if the paper by any fair intendment can be said to evidence the purpose of the writer to make posthumous disposition of his property, it will be declared to be a valid will, even though in form it is a deed, a check, a bond, a contract, a letter, a diary, or an indorsement upon a certificate of membership in a beneficial society. The authorities in support of this view are collected at length in the notes to 30 American and English Encyclopedia of Law, second edition, 575. It is a well-recognized rule that no particular form of words is necessary to make a will. The form of the instrument is immaterial if its substance is testamentary, and the reason for the rule is aptly stated in 30 American and English Encyclopedia of Law, second edition, 571, as follows: "There are no instruments more frequently written by unpracticed hands, or in which less formality or precision is required, than wills. In whatever language they may be couched or however incorrectly and bunglingly drawn, if they are duly executed, and the intention of the testator can be ascertained, they are valid and effectual to pass property of any kind or amount. Great allowance should be made for the ignorance of testators and the incorrectness of the language used by them. Uneducated men may make wills as well as others, and if upon the inspection of the whole instrument, duly regarding the situation and intelligence of the testator, his intentions can be satisfactorily ascertained, they must be carried into execution."

In *Appeal of Knox*, 131 Pa. 220, 17 Am. St. Rep. 798, 18 Atl. 1021, 6 L. R. A. 353, the instrument offered for probate was written in lead pencil, and is as follows: "A few little things I would love to have done: Always keep Vicie and Pet, if possible. Mama to have everything she wants, with a few exceptions of remembrances. Please let sister have my house

rent as long as she may live; then may my little namesake have it. * * * Take good care of Vicie 'somebody' as long as she lives. Saturday. Harriet." Concerning it, the court said: "The writing in question is clearly testamentary. Although it does not on its face purport to be a will, and in form is not a command, but a request, addressed to no special person by name, but plainly to those who should have the possession or control of her property, it has the essential element of being a disposition of property to take effect after death, and the precatory form is therefore immaterial."

In *Webster* v. *Lowe*, 107 Ky. 293, 53 S. W. 1030, the writing begins: "I was born December 28, 1804." It then recites the history of the writer to 1859 when he moved into town with Charley Webster and others, and then concludes: "I bought the property on 3d & Main, lent Charley some money, and he entered the grocery business. Our arrangement was that he could have the use of the building as long as he may require it, so that it brought me in ten per cent. on the purchase price, which was $1,550. The rent has been paid regularly. He has done much improvements about it, and I have requested my executors to give a clear deed for the property, after my death, to Maggie, his wife, and Charley." This was held to be a valid will.

In *Clarke* v. *Ransom*, 50 Cal. 595, the following writing: "Mayfield Grange, Tuesday June 23, 1874. Dear Old Nance: I wish to give you my watch, two shawls and also five thousand dollars. Your old friend, E. A. Gordon"—was admitted to probate as a valid will.

In *Succession of Ehrenberg*, 21 La. Ann. 280, 99 Am. Dec. 729, the following was held to be a valid will: "New Orleans, September 15, 1859. Mrs. Sophia Loper is my heiress. G. Ehrenberg." "New Orleans, March 16, 1861. The legatee's name is correctly spelt Loeper. G. Ehrenberg." On the back of the instrument is written the following: "Ehrenberg's will, to be opened by S. B. Patrick, who will see it executed. A copy of this will is left in the hands of the heiress."

In *Re Fouche's Estate*, 147 Pa. 395, 23 Atl. 547, the following was admitted to probate: "November 7th, 1890. Nuncupative by word of mouth my will was maid [sic] on the above date, everything left to my dear wife, Mary W. Fouche, all my real and personal estate and every I own at the time of my death. William W. Fouche."

In *Milam* v. *Stanley* (Ky.), 111 S. W. 296, 17 L. R. A., n. s., 1126, a letter written by a father to his daughters containing this provision: "I want to make you and Lulu a deed to that house and lot and I don't want you and her to ever have any trouble over it"—was held a valid will to transfer the house and lot mentioned.

In *Alston* v. *Davis*, 118 N. C. 202, 24 S. E. 15, the instrument held to be a valid will was a letter written by Augustus Davis at Stockdale, Texas, to his sister in North Carolina, which contained this provision: "If I should die or get killed in Texas the place must belong to you." There was not any suggestion in the letter that it should be preserved. It was offered for probate seven years after it was written.

In *Byers* v. *Hoppe*, 61 Md. 206, 48 Am. Rep. 89, the instrument proposed for probate was an indorsement on the back of a business letter. The material portion of the indorsement is as follows: "And Ann, after my death you are to have forty thousand dollars; this you are to have, will or no will. Take care of this until my death." Speaking of this, the court said: "In our opinion these concluding sentences: 'And Ann, after my death you are to have forty thousand dollars; this you are to have, will or no will. Take care of this until my death'— accompanied by the direction, 'To Eliza Ann Byers,' evince just as effectually, in legal contemplation, that the writer wrote them *animo testandi*, as if he had said in terms: 'I hereby will and bequeath to Eliza Ann Byers forty thousand dollars, to be paid to her at my death out of my personal estate.'"

In *Outlaw* v. *Hurdle*, 46 N. C. 150, the following was held to be a valid will: "It is my wish and desire that my good friend and relative Dr. Joseph B. Outlaw have all my property of every description. Dec. 20, 1848. David Outlaw."

In *Hunt* v. *Hunt,* 4 N. H. 434, 17 Am. Dec. 434, the instrument held to be a will was in form a plain promissory note, with this indorsement: "If I am not living at the time this note is paid, I order the contents to be paid to Arad Hunt 2nd. Witness Arad Hunt." A promissory note made payable after the maker's death may be a valid will. (*Jackson* v. *Jackson,* 6 Dana (Ky.), 257.)

It would be idle to multiply examples. The books abound with them, though the decisions are not uniform. It is also a rule of well-nigh universal recognition that it is not necessary that the testator employ any of the words "give," "bequeath," or "will," if his intention can be gathered from the language actually employed.

The letter written by Noyes from Thermopolis to my mind clearly evidences the intention of the writer that Mrs. Gerard should have all of his property after the payment of claims against his estate. The property was to pass to her at his death. The provision thus made for her, however, was revocable during the lifetime of Noyes; but, since there was not any revocation, the letter should have been admitted to probate as a valid will. Section 4772, Revised Codes, provides: "Of two modes of interpreting a will, that is to be preferred which will prevent a total intestacy." In my judgment this case cannot be distinguished in principle from *Barney* v. *Hayes,* 11 Mont. 99, 27 Pac. 384; 11 Mont. 571, 28 Am. St. Rep. 495, 29 Pac. 282.

2. It is urged, however, that the instrument is conditional, and, since Noyes did get back to Laurel, Montana, alive, the condition failed, and the instrument is invalid as a will for this reason. The subject of conditional wills has received much attention from courts and text-writers, and, while the decisions are not altogether uniform, the following rules are approved by the decided weight of authority: "(1) If the contingency expressed in the instrument is referred to as the occasion of making the will at that time, it is not, in that event, contingent; but if it is referred to as a reason for disposing of the property in a certain way, and the disposition and the contingency are

so related to each other that the one is dependent on the other, the will is in that event, contingent.  (2) If the language used in the will can by any reasonable interpretation be construed to mean that the testator refers to a possible danger or threatened calamity only as a reason for making a will at that time, such reasonable interpretation will prevail, and the will is not contingent.  (3) To make a will contingent or conditional, it must clearly appear from the language of the will that it was to operate only during a certain period or in a certain event.'' *(In re Forquer's Estate,* 216 Pa. 331, 66 Atl. 92.)

In view of all the surrounding circumstances, can it be said that Noyes only intended that Mrs. Gerard should inherit his property if he died in Wyoming, but if he returned to Montana alive she should not?  That such was not his intention this record demonstrates beyond a doubt.  For more than five years prior to his death he had at all times intended that she should receive practically all of his property at his death.  He so declared in his attempt to draw a holographic will in 1903; and again in 1907, when he executed the so-called ''Fenton will,'' he made manifest his intention in unmistakable terms.  In the letter he recites his condition and manifests a doubt as to his recovery.  Under these circumstances and the rules announced above, it is clear to my mind that the language, ''If I never get back alive,'' was intended to mean, ''At my death,'' and was the expression of the motive which prompted him to write the letter, and that his return to Montana alive was not a condition upon which the devise should become effective.  Section 4763, Revised Codes, provides: ''A will is to be construed according to the intention of the testator.''

Rehearing denied January 22, 1910.