ROSA BELLE SMITH et al., Appellants, v. L. O. FAY, Executor, et al., Appellees; H. F. ENENBACK et al., Intervenors.

No. 45283.

August 6, 1940.

Bennett Cullison and George O. Hurley, for appellants.

C. S. Foster and L. C. White, for appellees.

Stiger, J.—On December 10, 1918, C. O. White executed a deed conveying his real estate to his brother, George E. White. The deed was drawn and acknowledged by E. M. Hertert at the office of Hertert & Hertert in Harlan, Iowa, and delivered to Mr. Hertert under the circumstances hereinafter set out.

On December 11, 1918, C. O. White made a will leaving all of his personal property to George E. White. George E. White outlived C. O. White and at the time of the trial the grantor and grantee in the deed and both members of the firm of Hertert and Hertert were deceased.

Plaintiffs, who are collateral heirs of C. O. White, allege they are the owners of the real estate described in the deed because it was never delivered to the grantee.

Defendants, beneficiaries under the will of George E. White, claim the deed operated as an escrow being deposited by the grantor with E. M. Hertert and to be delivered by him to the grantee on the death of the grantor.

The grantor died on November 11, 1936. On November 12, 1936, the grantee secured possession of and recorded the duly acknowledged deed. Under the circumstances the burden of proving nondelivery was on plaintiffs. Heavner v. Kading, 209 Iowa 1271, 1275, 228 N. W. 311, 313.

The only witness produced at the trial who had knowl-

edge of the transaction between the grantor and Mr. Hertert was defendants' witness, Peter Heintz, an employee of Hertert & Hertert from 1908 to 1925. Mr. Heintz was the bookkeeper, wrote insurance policies, made real estate sales, took loan applications, and, in general, participated in the business of the firm with the exception of the law business. We will first set out the material portions of his testimony.

About noon on December 10, 1918, the grantor, C. O. White, came to the office of Hertert and Hertert and talked with E. M. Hertert about the execution of a deed to his real estate. Hertert told him to return to the office after lunch and he would have the deed prepared. When the grantor returned to the office he brought with him a small box labeled "C. O. White." identified in the record as Exhibit 2. After further conversation between White and Hertert, Mr. White signed the deed. The grantor then said, "I am going to put the deed in this box and leave it with you." Hertert told him that it would not be legal, that the deed would not be good, and that it would be necessary to deliver the deed to some third party. White replied, "Will you keep it here?" Hertert stated, "We will keep them for you if you want us to." Hertert then placed the deed in an envelope in the presence of White and the witness and wrote the following statement on the envelope: "C. O. White. Papers in this envelope to be delivered to George E. White after my death." Hertert then gave the sealed envelope to Heintz who placed it in the "will box" in the vault which was the box in which were placed papers that were to be delivered to third parties. The sealed envelope was in the will box when the witness left the firm of Hertert and Hertert in 1925. The will was placed in another envelope.

On cross-examination Mr. Heintz testified:

"Q. The purpose of putting the real estate in the deed was to save the additional probate expense? A. Yes, to save it from someone else, that is what Charlie told me specially.

"Q. He told you then that he was fixing so that after he was gone George would be sure and get the property? A.

Yes, if he should die first for his protection so if Charlie died first, George would be sure and get the property. There was nothing said there about what would happen if George died first that I know of. I never heard Mr. Hertert say that he could come and get his deed back if George died first.''

Defendants introduced in evidence the sealed envelope, Exhibit 10, and identified the writing on the envelope as the handwriting of Mr. Hertert. The testimony of Heintz effectively supported the contention of defendants that White delivered the deed to Hertert without any reservation of a right to recall it and with instructions to deliver it to the grantee on the death of the grantor.

Plaintiffs failed to sustain their burden of proving non-delivery which they attempted to establish through Attorney Russell F. Swift who testified substantially as follows: The witness was attorney for the administrator of the estate of John Hertert who died in August 1936. After his death his daughter remained in the office and looked after the insurance business and the witness looked after the law business. E. M. Hertert predeceased John Hertert. After the death of Charles White in November 1936, the grantee in the deed, George E. White, asked the witness to go with him to Hertert's office stating he wanted to get Charlie White's box. The key to the box was in the vault. The witness unlocked the private box of Charles White, Exhibit 2, and stated that he found the deed, will, and other papers in that box. He gave the deed to George E. White. With the consent of George White the witness took possession of the will for the purpose of commencing probate proceedings. There was a box in the vault containing wills but there were no deeds in it. The envelope, Exhibit 10, was not in Exhibit 2 or in the will box. The witness published a notice in a newspaper for owners to get their boxes and papers at the office of Hertert & Hertert.

However, evidence introduced by defendants tended to show that Mr. Swift was mistaken in stating that he found

the deed in Exhibit 2 in the vault of the office the day after the grantor died.

Hans Hansen, a resident of Harlan for 30 years, testified that he was acquainted with Charles and George White and Hertert & Hertert. After John Hertert's death he helped Catherine Hertert, the daughter of Mr. Hertert, in the office. Catherine and her mother gave the witness the box, Exhibit 2, and told him to take it to Charlie White who was ill at the Iowa Hotel. The witness delivered the box to George E. White at the hotel asking him to deliver the box to his brother Charles. George replied that he would do so and the witness saw him go upstairs with the box.

Mrs. Nelson, a nurse who cared for Mr. White three weeks prior to his death, identified Exhibit 2 and stated it was in Mr. White's room when she came to the hotel as his nurse and remained in the room on the dresser until after his death.

The delivery of Exhibit 2 to C. O. White was in accord with the published request of Mr. Swift to owners of boxes to remove them from the office.

Mr. Heintz testified he placed the deed in the will box in the vault in Hertert's office pursuant to the direction of Mr. Hertert the day the deed was executed and that it was in the box when he left in 1925. There is no evidence that the deed was removed from the will box. The presumption is that the situation remained unchanged and that Messrs. Hertert & Hertert maintained the deed in the will box for the purpose of performing their duties under the escrow agreement. Mr. Swift testified that the envelope, Exhibit 10, was not in the will box or Exhibit 2 after the death of the grantor and that he never saw Exhibit 10 until the trial. However, defendants produced the envelope at the trial and it is a reasonable assumption that it was in one of the boxes and with the deed.

We are of the opinion that Exhibit 2 was not in the vault of the office of Hertert & Hertert the day after the death of Charles White and that Mr. Swift obtained the deed from the will box and delivered it to the grantee.

It is obvious that Mr. White intended to give all of his property, real and personal, to his brother. We conclude that when the grantor delivered the deed to Mr. Hertert with instructions to deliver it to grantee on the death of grantor, he parted with all control over the deed with the intention that title pass immediately to the grantee subject to his reserved life estate. It follows that there was a sufficient delivery. In Bohle v. Brooks, 225 Iowa 980, 985, 282 N. W. 351, 354, the court said:

"The effect of thus placing the instrument in the hands of a third person with instructions to deliver after the death of the grantor is to reserve a life estate in the grantor, with the title immediately passing to the grantee, but with his right to possession and enjoyment postponed until the grantor's death." See Goodman v. Andrews, 203 Iowa 979, 213 N. W. 605.

Plaintiffs introduced evidence showing that subsequent to the execution and delivery of the deed the grantor sold and mortgaged some of the property conveyed by the deed. Title having vested in White by delivery of the deed, subsequent conveyances by the grantor had no effect on the title of grantee.

Appellants contend the statement of Mr. Heintz that the grantor told him he was fixing it so if he died first "George would be sure to get the property" establishes an intention of the grantor to make a testamentary disposition rather than a conveyance of a present interest in the real estate. We do not so construe this testimony. The witness testified to statements the grantor made to him at the office of Hertert & Hertert. This witness had stated on cross-examination that he was not present in the room where the grantor talked with Mr. Hertert about his purpose in executing the deed. The purport of the transaction between the grantor and Hertert is revealed by the notation on the envelope and the deposit of the deed in the will box. The most plaintiff can claim from the statement "If Charlie died first, George would be sure and get the property" is that the deed was to be delivered to the grantee on

the contingency that he survive the grantor. The question here is not whether the grantee obtained a vested or contingent remainder, the question is whether or not there was an absolute delivery of the deed. The quoted testimony of the witness affects only the nature of the estate granted and does not bear on the question of the delivery of the deed.

Appellants further contend the evidence shows that the grantor reserved the right of recall and therefore, though the right was not exercised, there was no valid delivery, citing the recent case of Orris v. Whipple, 224 Iowa 1157, 280 N. W. 617, which holds that the deposit of a deed in the grantor's safety box where it remained under the control of the grantor until his death was not a sufficient delivery. The decision rests on the proposition that a retention of possession and control of the deed by the grantor is inconsistent with the delivery and an intention to convey a present interest in the property to the grantee. The case of Davis v. Brown College, 208 Iowa 480, 222 N. W. 858, recognized the rule that a delivery of a deed to a third person, with no reservation of the right to recall the deed to be delivered to the grantee upon the death of the grantor, constituted a good delivery, but further held that an unexercised right to recall would not defeat delivery. This decision had the support of some of our prior cases.

While the case of Orris v. Whipple, supra, pointed out that there was an escrow delivery in the Brown College case and overruled the latter case only in so far as it was in conflict with the opinion, the discussion and pronouncements of the court on the question of delivery in the Orris case are irreconcilable with the decision in the Brown College case. As there is no difference in principle between actual possession and control (safety box cases) and the right of possession and control under a reservation of the right to recall the deed in an escrow delivery, the decision in the Orris case is in conflict with the decision in the Brown College case and the ruling in the Brown College case that an unexercised right of recall of a deed operating as an escrow does not defeat delivery was, in effect, re-

pudiated by the case of Orris v. Whipple, supra. However, appellants' contention cannot prevail because in the instant case we find the grantor parted with all dominion and control over the deed.

We concur in the trial court's view of the law and evidence and the case is affirmed.—Affirmed.

RICHARDS, C. J., and MITCHELL, HALE, SAGER, MILLER, OLIVER, and BLISS, JJ., concur.