This appeal is from an order made by the district court for Glacier county denying the admission to probate of a writing presented as a will. The writing was a long letter written by the deceased, O.C. Augestad, to a brother, Arndt Augestad of Wisconsin. On July 18, 1937, not quite a month after the date of the letter in question, O.C. Augestad died. His son Finn made application to the district court for the appointment of an administrator of the estate of his father, and in this petition he recited that his father left no will. An administrator was appointed on August 6, 1937. In November, 1937, a petition was filed by the appellant in which it is stated that the petition is made on behalf of the brother Arndt, praying that the letter in question be admitted to probate as a holographic will. A demurrer to the petition was filed on December 6, 1937, and that demurrer was sustained. An appeal was taken to this court and upon that appeal this court held that a demurrer would not lie to a petition for the probate of a will. (107 Mont. 619, *Page 140 88 P.2d 32.) Subsequently objections were filed by the heirs-at-law of the deceased and hearing was held before the district court sitting without a jury. Upon that hearing the order denying probate of the will was made. In that order the court found "that said instrument contended by said petitioner, S.J. Rigney, to be the last will and testament of Ole C. Augestad, deceased, is not in fact a will."
The letter relied upon as a will by the proponent was written entirely in the handwriting of the deceased, was dated and bore his signature. The only question presented on this appeal is as to whether the letter in question shows the necessary animustestandi. The letter was written partly in Norwegian and partly in English, and was a very long one. The letter tells in detail of the writer's situation. It contains a great deal of matter relating to his life and his philosophy. In the course of the letter he tells of his financial situation and of his property holdings. He tells in this letter of his feelings toward his children in Wisconsin, stating that they have never visited him nor have they ever done anything for him. The language relied upon in the letter, in addition to the general statement of his business affairs and his attitude toward the children in Wisconsin, is as follows: "I had thought to set up a testament, and temporarily anyhow. So that you and Finn could get a half part each! but make Finns part so, that he gets something such as $10 a month, for if he gets all, it will go all at once, he ought really not to have anything, but I thought anyhow temporarily, you shall get your share, if there is oil here then it could be much."
There is no definite fixed rule by which testamentary intent[1] may be gauged. Each case must stand on its own peculiar facts and circumstances. Except for the statement of the general rules found in many cases cited in the briefs and by the text-writers, little aid can be gained from decisions in this and other jurisdictions. All of the courts lay down the rule that the determination of the testamentary intent is to be made from the writing itself, and most states hold that the surrounding circumstances may be considered, Montana being one of the latter. *Page 141 
In the case of In re Noyes' Estate, 40 Mont. 231,106 P. 355, 358, it is said: "If the paper propounded is clearly of a testamentary character, it speaks for itself; but, if the intention of the testator is left in doubt by the form of expression used, then the intention must be arrived at by considering it in the light of the surrounding circumstances, and the intention must clearly appear. (McBride v. McBride, 26 Grat. (Va.) 476.) The books abound in cases in which informal instruments have been, on the one hand, admitted to probate, or, on the other, held not to be testamentary in character. No rule can be stated that will apply to all cases. Each must be determined upon its own facts."
The cases also agree without exception that the animus[2] testandi must appear. In the present case testimony was given by the appellant, an attorney-at-law, in support of his view that the latter was in fact a will to the effect that prior to the date of the letter on a number of occasions the deceased had discussed with him the desirability of making a will, and appellant had explained the requirements of a holographic will to deceased and after the date of the letter and prior to Augestad's death on the occasions on which he had seen the deceased, deceased had not mentioned the matter to him again, it apparently being appellant's theory that Augestad's failure to discuss the making of a will after the date of the letter was an indication that deceased had thought his letter constituted a will. No testimony is given to the effect that the deceased had expressly so stated, but appellant relies merely on the inference that since he did not mention the making of a will after the date of the letter, deceased had made the will that he had talked about. This testimony would not seem to be of much value and an examination of it and the letter itself forces us to the conclusion that the trial court ruled correctly in denying the petition for probate. As in other cases, we here assume that the[3] trial court's action was prima facie correct. However, without that assumption we cannot find in the letter the essential feature of any will, holographic or otherwise, namely, the animus testandi. At most this letter expresses an intention, at some time in the *Page 142 
future, to make a will and that his intention had been that when such will was made one-half of his property should go to the contestant, Finn Augestad, under some sort of a trust arrangement, and the other half should go to the brother Arndt.
While it is true that the law favors testacy, yet the intention of the deceased to dispose of property after his death by the instrument in question must be clear. That intention does not so appear here. In the case of In re Noyes' Estate, supra, based on an instrument which much more clearly expresses the intention to dispose of the property to our minds than does the present letter, this court could not find the necessary intent. In that case a dissenting opinion appears and a number of examples of borderline instances admitting writings to probate are given. Each one of the examples given in the dissenting opinion is much more clearly an expression of the intention to dispose of the property than is the present one.
The judgment is affirmed.
MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, ANGSTMAN and ARNOLD concur.