DUANE VRBA, by EVELYN VRBA, his next friend, appellant, v. MASON CITY PRODUCTION CREDIT ASSOCIATION et al., appellees; EDWARD H. VRBA, appellee.

No. 49025.

(Reported in 80 N.W.2d 495)

JANUARY 15, 1957.

William D. Lyons, of Cresco, for appellant.

Breese & Cornwell, of Mason City, and Elwood, Anderson & Elwood, of Cresco, for appellees.

GARFIELD, J.—A 14-year-old boy by his mother as next friend brought this equity suit for specific performance of an alleged oral contract to convey a 200-acre farm to someone designated by plaintiff or in lieu thereof for money damages. Following trial plaintiff was denied relief and title to the farm was quieted in defendant Mason City Production Credit Association. (For convenience we disregard the fact three officers of the corporation are also defendants.) The trial court held proof of the claimed contract was insufficient and any evidence thereof was within the statute of frauds (section 622.32, Code, 1954). We affirm the decree.

Prior to March 1955 the farm in question was owned by Edward H. Vrba or his wife. Defendant association held a second mortgage on it which was foreclosed. The association

obtained sheriff's certificate for the farm at the sale on March 6, 1954. No redemption was made and defendant received sheriff's deed March 15, 1955. Mr. Vrba and his attorney, Mr. Laub, attended a meeting of defendant's board of directors on February 25, 1955 (about ten days before the time for redemption expired) in an effort to save the farm for the Vrbas. Plaintiff claims an oral contract was entered into at this meeting for defendant to convey the farm to someone designated by plaintiff upon payment of the amount defendant had invested in it.

There was an equity in the farm of several thousand dollars above the amount of the first mortgage (about $13,000) and the sum necessary to redeem from foreclosure of the second mortgage (about $13,500). However, Mr. Vrba was involved financially and did not want to redeem in his own name. He and his attorney decided it would be better to have the title in the Vrbas' 14-year-old son or someone for him.

At the February 25th board meeting Attorney Laub orally proposed that defendant sell the farm on contract to someone who would be appointed guardian for the boy, with a down payment of $4000, the rest of the purchase price to be paid within five years. It clearly appears the board did not accept this offer. As a witness Mr. Laub testifies he then asked one of the directors, "What do you want, so Duane (plaintiff) can acquire this farm?" Laub says the director replied "all we want is our money out of it. We don't want one cent profit", and the other directors nodded approvingly.

Mr. Laub further testifies defendant's secretary-treasurer and a director informed him after the meeting the board went on record that the Vrba family should have the first opportunity to acquire the farm, he should have a chance to attend the next board meeting and would be advised of the time. Laub says he asked at the meeting how much was owing defendant and the secretary-treasurer replied it was about $12,500 "plus additional charges that were rather vague." Mr. Vrba testifies two board members and the secretary-treasurer (not a member) said defendant would acquire the farm when the time for redemption expired, "we would acquire it from them by paying what they had against us and were given until the next board meeting to complete the transaction."

The next board meeting was on March 29. Mr. Laub, with the three Vrbas, attended. Laub says he had a "C.D." for $3300 and had arranged with a banker named Farnsworth that his bank would honor a check for the rest of what defendant had against the farm. This total amount was then $13,499.28 plus some little added charges. Mr. Laub orally proposed to the board the farm be deeded to him and said he had agreed with Duane's parents to hold it in trust for Duane and was prepared to pay all defendant had in the property. The board informed Laub it had an offer of $33,000 for the farm and if he wanted to pay that amount he could have it. Mr. Laub was unwilling to offer more than the sum defendant had against the farm. Later, on April 12, defendant sold the farm on contract to one Madsen for $33,000.

It afterwards developed Laub had prepared a written contract before the second board meeting wherein he and the banker, Farnsworth, granted plaintiff an option for five years to purchase the farm from them for the amount they had invested in it plus $2000, together with interest at six per cent, the grantors to receive ten per cent of the rentals as a fee for managing the farm. The contract had the approval of plaintiff's parents, but was never executed by anyone. It is apparent the contract evidences the arrangement Laub and Farnsworth would have made with the Vrbas if the former had acquired title to the farm.

Members of defendant's board and the secretary-treasurer admit Laub and Vrba were told at the first (February 25) board meeting that all defendant wanted out of the farm was what it had invested in it. Their version, however, is this was on the assumption it would be paid before the period for redemption expired and it made no commitment to convey the farm to anyone for any amount if it should acquire the title. Some of these witnesses testify they urged the Vrbas to redeem on several occasions during the redemption period, saying "we don't want the farm, all we want is our money."

Defendant's board members also say there never was any talk of deeding the farm to Mr. Laub until he made such proposal at the March 29th meeting.

The minutes of the February 25th board meeting contain this recital: "The board of directors discussed the possibility of reselling the Edward H. Vrba farm in the event a sheriff's deed is obtained by the association. Mr. Laub and Mr. Vrba proposed that the association should sell the property back to the Vrba family—more specifically to the son under a guardianship arrangement. The board took no action and made no commitments pertaining to this matter."

We will later mention some other evidence.

I. The trial court found in substance it was not shown there was any meeting of the minds of the parties upon any definite oral contract which should be specifically enforced. While our review is de novo we are justified in giving weight to these findings, especially since the case involves fact questions the trial court was in better position than we to decide. Bell v. Pierschbacher, 245 Iowa 436, 439, 62 N.W.2d 784, 786, and citations; Blum v. Keene, 245 Iowa 867, 899, 63 N.W.2d 197, 214.

II. Vanston v. Rupe, 244 Iowa 609, 618, 57 N.W.2d 546, 551, states: "While the thought has been expressed in language that varies somewhat, it is well settled that specific performance of an oral contract to convey realty will not be decreed unless proof of the contract is clear, satisfactory and convincing. The various expressions of this thought found in our decisions are set out in Williams v. Harrison, 228 Iowa 715, 723, 293 N.W. 41, and citations. This does not mean that proof of the contract must be undisputed or to an absolute certainty—reasonable certainty is sufficient. Williams v. Chapman, 242 Iowa 294, 307-309, 46 N.W.2d 56, 63, 64, and citations."

See also Bell v. Pierschbacher, supra, 245 Iowa 436, 439, 440, 62 N.W.2d 784, 786, and citations; Rorem v. Rorem, 244 Iowa 980, 988, 59 N.W.2d 210, 214, 215, and citations; 81 C.J.S., Specific Performance, section 143b; 49 Am. Jur., Specific Performance, section 21, page 32.

If we give the trial court's findings the weight to which they are entitled the conclusion is not warranted that plaintiff's claim has been established by the required degree of proof. No definite and complete contract has been proven. Oral assurances by individual members of defendant's board, assuming

they were made, that all the association wanted was its money back, without profit, fall short of an enforceable contract to convey to plaintiff or someone for him.

Some of the testimony of Mr. Laub, plaintiff's principal witness, indicates he did not consider a complete contract had been entered into. He says he suggested to the board on February 25 that a written contract be prepared and he would be happy to meet with defendant's attorney for the purpose of drawing it up. As an attorney Mr. Laub must have known the importance of a written contract for the sale of a valuable farm. About March 19 defendant served Mr. Vrba with notice to vacate the premises. Upon learning of this notice Mr. Laub telephoned defendant's attorney to inquire why it had been served when "there is a kind of a deal on this thing * * * and we hope to acquire the property."

Testimony of Mr. Vrba perhaps furnishes more support for plaintiff's theory of the case than does Mr. Laub's. But this evidence is denied by several of defendant's witnesses and the minutes of the February 25th board meeting lend support to the denials.

Further, there is no evidence members of defendant's board ever offered to sell to Mr. Laub and Mr. Farnsworth to enable them to resell to plaintiff at a substantial profit as provided by the unsigned contract Laub had prepared. Defendant was under no obligation to convey to them under such circumstance. Laub's proposal to the board on March 29 was not an acceptance of the offer Vrba testifies board members made on February 25. See McCutchan v. Iowa State Bank, 232 Iowa 550, 555, 5 N.W. 2d 813, 816, and citations.

Plaintiff's witnesses, Mr. Laub and Mr. and Mrs. Vrba, were all financially interested in the outcome of the case. Mr. Vrba had been convicted of a felony. No disinterested person testifies in support of the alleged oral contract. Evidence for plaintiff consists of repetition of oral statements it is claimed members of defendant's board made, not of any formal board action. Such testimony is not very satisfactory in character. It is significant that the claimed agreement with defendant was not reduced to writing although the Vrbas had legal advice and

their attorney was at hand. Fairall v. Arnold, 226 Iowa 977, 992, 993, 285 N.W. 664.

III. Defendant has relied throughout on the statute of frauds, subsection 3 of section 622.32, Code, 1954. As we have indicated, the trial court upheld this contention. We reach the same conclusion.

Plaintiff argues the statute of frauds is not applicable because section 622.33 states it does "not apply where the purchase money, or any portion thereof, has been received by the vendor * * *." He contends the Vrbas refrained from redeeming the farm from the foreclosure sale and from selling it, in reliance on defendant's claimed agreement to convey to someone designated by plaintiff, for the amount of defendant's investment in it. It is said this constituted part payment of the purchase money within the meaning of 622.33.

It is true we have said the term "purchase money" as used in this connection is synonymous with consideration. Rohrbach v. Hammill, 162 Iowa 131, 138, 143 N.W. 872, and citations. The holding of the Rohrbach case is that a check, even before it is cashed, may constitute part payment of the purchase money *where the parties agree it is to be so considered.* The Rohrbach check, which was delivered to the vendor, bore the notation "Earnest Money on Treloar Farm."

This phase of the present controversy seems more like Fairall v. Arnold, supra, 226 Iowa 977, 992, 285 N.W. 664, and In re Estate of Hayer, 234 Iowa 299, 12 N.W.2d 520. The Fairall case holds an oral agreement to deed or devise realty is not taken out of the statute of frauds by plaintiff's refraining, pursuant to his prior assurance, from filing a claim against the estate of the promissor's spouse. In re Estate of Hayer follows Fairall v. Arnold. We there reject the claim an extension of time to pay a bequest of $10,000 and forgiveness of interest thereon took out of the statute of frauds an oral contract for the creation of an interest in land. Section 622.33 contemplates the purchase money, or part thereof, "has been received by the vendor."

Further, it is well settled that proof of what the vendee did which amounts to consideration for the claimed oral

contract to convey must be as plain and definite as evidence of the contract itself and it must be referable exclusively to the contract. Vanston v. Rupe, supra, 244 Iowa 609, 620, 57 N.W. 2d 546, 552, and citations; In re Estate of Karr, 235 Iowa 351, 368, 16 N.W.2d 634, 642; Moore v. Olson, 229 Iowa 182, 294 N.W. 305; 81 C.J.S., Specific Performance, section 144.

Testimony that the Vrbas, in reliance on the alleged contract, refrained from selling the farm for more than it would have taken to redeem is not very convincing. Mr. Vrba testifies they had advantageous offers from one Rink and a real-estate dealer. However, Mr. Rink, a witness for plaintiff, says on cross-examination, "I never made any offer to the Vrbas." There is also undisputed testimony that Mr. Vrba told one of defendant's officers about the middle of February he had two or three chances to sell the farm but they wanted to steal it and he would just as soon "throw in the tail with the hide."

In any event it is clear the evidence that the Vrbas refrained from redeeming and from selling the farm is not exclusively referable to the claimed contract. It may well be they did not redeem because Mr. Vrba was financially involved to other creditors or they were unable to raise the necessary money in time and did not sell because, as indicated by the testimony just referred to, they regarded the offers as too low. Conduct of the Vrbas in these two respects is also referable to any of several other reasons aside from the alleged contract. See Fairall v. Arnold, supra, 226 Iowa 977, 992, 285 N.W. 664.

The foregoing disposes of the principal matters argued. Other grounds on which the decree might perhaps have been based need not be considered.—Affirmed.

All JUSTICES concur.