LAWRENCE A. BRANDT, appellee, v. HATTIE SCHUCHA, administratrix of estate of Vannie M. Neitzel, deceased, et al., appellants.

No. 49624.

(Reported in 96 N.W.2d 179)

APRIL 8, 1959.

Linnan & Lynch, of Algona, for appellants.

Kelly, Spies & Culver, of Emmetsburg, and Winkel & Winkel, of Algona, for appellee.

GARFIELD, J.—Vannie M. Neitzel, a childless widow residing at Roundup, Montana, died December 11, 1956, the record title-holder of the 160-acre farm in Kossuth County, Iowa, ownership of which is in controversy here. Plaintiff, tenant on the farm since November 1, 1938, brought this equity action in three counts against the administratrix and heirs (cousins) of Mrs. Neitzel. He claims to own the land: first, as grantee of a deed executed September 10, 1956, by Mrs. Neitzel and placed by her in escrow with J. A. Liggett at Roundup; second, under an oral contract with Mrs. Neitzel made on or about December 6, 1956, by which plaintiff agreed to pay her $3000 a year during her life, the land to be plaintiff's upon Mrs. Neitzel's death; third, as devisee of an alleged holographic will (recognized by Montana law) consisting of certain letters Mrs. Neitzel wrote plaintiff.

Defendants denied the principal averments of plaintiff's petition, alleged Mrs. Neitzel died intestate owning the farm and they are her heirs and asked that their title be quieted as against plaintiff.

Following trial at which most of the evidence was offered by plaintiff his counts 2 and 3 based on the alleged oral contract to convey and the holographic will were dismissed, but his claim under count 1 as grantee of the deed from Mrs. Neitzel was upheld. Defendants' cross-petition was dismissed. Defendants have appealed from the decree and plaintiff has cross-appealed from so much of it as dismissed his counts 2 and 3.

Plaintiff's cross-appeal, although harmless, was unnecessary. We are firmly committed to the view that the successful party (plaintiff here) may, without appealing, save the judgment if error was committed against him which, if corrected, will make the result reached in the trial court a right result. Iowa Electric Co. v. Home Insurance Co., 235 Iowa 672, 676, 17 N.W.2d 414, 416; Pohler v. T. W. Snow Constr. Co., 239 Iowa

1018, 1022, 33 N.W.2d 416, 418; Lawrence v. Tschirgi, 244 Iowa 386, 389, 57 N.W.2d 46, 47, and citations in these opinions.

The principal question under plaintiff's count 1 is whether there was a valid delivery of the deed. When Mrs. Neitzel executed and deposited it with Mr. Liggett it was accompanied by a letter addressed to his agency, signed by her, which read: "I herewith deposit a deed from myself to Lawrence Brandt of Elmore, Minnesota * * *. You are hereby authorized to deliver this deed to Mr. Brandt, in the event of my death. This deed is deposited subject to withdrawal by me during my lifetime. * * *." (Elmore is plaintiff's post-office address.) Mr. Liggett testified he suggested including this last sentence in the letter and, after some discussion, Mrs. Neitzel agreed to it. The deed remained in Liggett's possession until time of trial.

The trial court's holding there was a valid delivery of the deed is based on his conclusions there was a new and independent delivery to the escrow agent after the date of the above letter, prior to Mrs. Neitzel's death, and that she, by her acts and statements in letters to plaintiff dated October 2 and November 5, 1956, by statements to the witnesses Liggett, Mrs. Mentek and Mrs. Bennett after September 10, 1956, and by agreeing on December 6, 1956, to accept an annual payment of $3000 from plaintiff, in effect waived or revoked the recall provision in the escrow letter.

A rather full statement of facts seems called for. Plaintiff first occupied the farm as tenant of Mrs. Neitzel's father from whom she inherited it. There was a written lease only for the first fourteen months of occupancy with oral extensions from year to year thereafter. Mrs. Neitzel, who was about 82 at her death, with failing eyesight and hearing, thought well of plaintiff and wanted him to have the farm at her death. Defendants took little interest in Mrs. Neitzel. She said "they had plenty of their own," did not need her property and she did not intend to leave them anything.

In the hope plaintiff might become owner of the farm Mrs. Neitzel wrote him from Roundup July 31, 1956:

"Lawrence would you be interested in buying the place if I made you a good proposition? Could you pay me cash rent similar to what I get out of the place now and you take over

all expenses—taxes—insurance and whatever else there was—then you could have the say so of whatever you wished to do or plant. As long as I live you would pay me the amount agreed upon each year and at my death I will Deed it to you. This is just an idea. Or would you rather buy it outright—a small down payment with set amount each year and at a low rate of interest.

"Now you make me a proposition. With my sight so poor it is almost impossible for me to do so much book work * * *. You have always been very satisfactory and if you can help me out now I would like to do something for you. At my age I feel 10 years at most is the length of my living and any time from now on it is liable to happen. So that is why I would like to get things fixed up now. I know of no one I would rather be the owner when I am thru with the farm than you. * * * So I would like you to express yourself."

A second letter from Mrs. Neitzel to plaintiff, dated August 30 (1956), stated:

"Here is what I am going to do to protect you. In case I should not wake up some morning * * * or get killed instantly which does happen I am going to Deed the farm to you (at my death) sudden death that is. It will be in an envelope in my * * * Box here in the Miners & Merchants Bank. Your name will be on it ready to mail to you. This will protect you until we get a chance to make a deal of some kind. I only want what is coming to me while I live then it is yours. Now you can do things you would like to do for your own benefit. It is O.K. with me. I would like you to take over all expenses, upkeep, repairs and pay me so much a year. Figure out how much you think you can give me. It is a game of chance for you tho you cannot lose. If I live 1 year 5 years or 10 which would be the most you would get the farm. I cannot take care of the biz and myself. * * * Taxes on the farm run around $400.00 per year. Insurance according to what you want to carry. * * *.

"Well, please write me what you think of my plan for handling the farm or you may make suggestions. I am open for your opinion. * * *."

September 13 plaintiff's wife, for him, wrote Mrs. Neitzel, "* * * about the plan you suggested. We've talked it over and considered it alright, but would rather have you say how much you have to have a year."

Mrs. Neitzel next wrote plaintiff October 2:

"* * * was pleased to learn you are interested in some kind of proposition whereby you become owner of the land. You have been very loyal to us so I see no reason why I should not do something for you.

"Now tell me would you rather buy the place and pay it off as you can or would you rather pay me a yearly sum that we can decide on as long as I live be it one week one year or 10 years which is all a gamble however when I die it is yours no strings attached. I want you to take over all the expenses taxes and all so I will not have any of the biz to handle. You decide what & where you plant crops start in the 1st of 1957 as tho it is your own. I am enclosing a copy of the expenses in the past 4 years so you can have an idea what they are.

"Here is what I have done for the time being so to protect you. I had this Deed made out to you in case something should happen to me before we decide on a plan and get it in black & white. This is a copy of the Deed which I hold and ask you to please return it also the expense sheet I would like back. The Deed is in possession of Mr. J. A. Liggett. he is authorized to turn it over to you in case of my death as I said before this holds good until we make up a contract or whatever we do.

"* * * So, whatever you wish to do to improve things for your own good you may do * * *.

"* * * Anyway Mr. Liggett says when we decide on some plan he will put it in writing and you can take it to your attorney and make what changes you prefer.

"So I think that will work out. Would you know what land sells for around there? Or who could I write to—to find out in case you decide to buy it. In that case any unpaid balance at my death would be *canceled*. * * *. Write me what you decide —think or wish to do. * * *."

October 8 plaintiff's wife, for him, wrote Mrs. Neitzel: "Now in buying the place. We've talked it over and believe we'd rather pay the taxes and all expenses and pay you so much

a year as long as you live. Let us know what you think you have to have yearly."

Mrs. Neitzel's last letter to plaintiff, dated November 5, said: "* * *. It is getting so I cannot see to write. * * * That is why I am anxious to get this turned over to you. Spose I will have to notify all concerned to send all papers to you. * * *.

"I am still collecting some information before I write you the details. I am glad you chose the chance way. As somehow I *fell* I am not to be here very many years. Then you will be the winner and that is the way I want it. So go ahead with any plans or changes you wish. It is yours to do as you like. I will get you some figures soon I hope. I will pay 1956 taxes which is not due until March. * * *. You will hear from me quite soon."

The same day this last letter was written Mrs. Neitzel wrote a former loan agent at Algona, county seat of Kossuth county: "I own the 160 acres [describing it]. I have a prospective buyer for the place and may sell—not sure yet. What I would like to know is the value per acre of land in that locality." The letter goes on to describe the farm. Mrs. Neitzel evidently desired the information to help her decide the amount of the annual payments plaintiff should make. Mrs. Neitzel made other attempts to learn the value of the farm for the same purpose. The recipient of this letter gave it to his son to answer. He wrote Mrs. Neitzel November 13 he would estimate the value of the farm at about $265 an acre.

When it appeared Mrs. Neitzel would be unable to visit the farm in the fall of 1956 plaintiff went to Roundup to see her. Principal witness to the conversation between them on December 6 was the escrow agent, Mr. Liggett. When Liggett arrived at Mrs. Neitzel's home she informed him she and plaintiff had agreed upon $3000 per year as payment by him to her during her life, commencing in the fall of 1957, in lieu of rent. "Q. Did she state what would happen to this farm if she died? A. Definitely the land was to go to Mr. Brandt [plaintiff]."

Liggett further testified, in effect, it was agreed between Mrs. Neitzel and plaintiff that he was to return home, have his attorney prepare a contract to embody their agreement, send it to Mrs. Neitzel who would go over it or have an attorney do so and

sign it. She was also to make a will. On cross-examination by one of defendants' counsel, who was then representing the witness in other legal matters, Mr. Liggett said, "At that time I understood her intention to be that Brandt was to receive the land at her death. * * * I told both Mr. Brandt and Mrs. Neitzel that in the event of her death prior to the execution of an agreement I would not deliver that deed to Mr. Brandt; I would wait and see what transpired."

Upon his return from Montana plaintiff had his attorney prepare a contract under which he agreed to pay Mrs. Neitzel $3000 a year during her life and on the January 15th following her death, upon receipt of which her executor would deed plaintiff the farm in question. December 11 the attorney wrote Mrs. Neitzel a letter inclosing the contract in duplicate, signed by plaintiff and his wife, and authorizing any change in its terms that did not meet with Mrs. Neitzel's approval. Mrs. Neitzel died in Montana the day the letter was mailed from Iowa and of course never received it.

Mrs. J. S. Mentek and Mrs. Laura C. Bennett, close friends of Mrs. Neitzel, testified she said several times she wanted plaintiff to have the farm at her death. Mrs. Mentek stated decedent told her it would belong to plaintiff when she died. Another lady, living at Elmore, Minnesota, testified Mrs. Neitzel told her at different times she wanted plaintiff to have the farm when she was through with it. Mrs. Bennett said that on her deathbed decedent kept saying, " 'I just can't die, there are things I have to take care of, I haven't taken care of them and I must do it before I die.' " We refer later to other evidence.

■■ I. Of course delivery is essential to the validity of a deed. Wagner v. Wagner, 249 Iowa 1310, 1316, 90 N.W.2d 758, 762, and citations; Jeppesen v. Jeppesen, 249 Iowa 702, 707, 88 N.W.2d 633, 636; 26 C. J. S., Deeds, section 40. A valid delivery was not effected here merely by leaving the deed with Mr. Liggett, accompanied by instructions to deliver it to plaintiff upon the grantor's death "subject to withdrawal by me during my lifetime."

■ We have frequently held an effective delivery may be made by placing the deed with a third person, *without reserving the right to recall it,* with instructions to deliver to the grantee

upon the grantor's death. The effect of thus placing the instrument with a third person is to reserve a life estate to the grantor with title immediately passing to the grantee, but the latter's right to possession is postponed until the grantor's death. Hilliard v. Hilliard, 240 Iowa 1394, 1399, 1400, 39 N.W.2d 624, 627, and citations; Ferrell v. Stinson, 233 Iowa 1331, 1337, 11 N.W.2d 701, 704; Smith v. Fay, 228 Iowa 868, 873, 293 N.W. 497.

Under these precedents if it were not for the reservation of the right to recall the deed in the letter to Mr. Liggett there would have been a valid delivery on September 10, provided Mrs. Neitzel intended to vest title in plaintiff at that time, subject to the grantor's right of possession during her life.

Davis v. John E. Brown College, 208 Iowa 480, 222 N.W. 858, and Boone Biblical College v. Forrest, 223 Iowa 1260, 275 N.W. 132, 116 A. L. R. 67, held there was an effective delivery where a deed was placed with a third party, in spite of an express reservation of the right to recall it during the grantor's life, provided the reservation was never exercised. These decisions were contrary to the clear weight of authority and to the principles of some of our own cases and were overruled in Orris v. Whipple, 224 Iowa 1157, 1171, 1172, 280 N.W. 617, 129 A. L. R. 1, 10. The Orris case also overruled Robertson v. Renshaw, 220 Iowa 572, 261 N.W. 645, which was based mainly on Davis v. John E. Brown College, supra.

Plaintiff argues the case last named and the two later decisions, supra, largely based thereon, were not overruled by Orris v. Whipple because the deed there was not placed with a third party but in the grantor's safe-deposit box. Notwithstanding this factual distinction between the John E. Brown College and Boone Biblical College cases on the one hand, and Orris v. Whipple, the argument cannot be accepted. See Smith v. Fay, 228 Iowa 868, 874, 875, 293 N.W. 497.

We have construed the Orris opinion several times as overruling these two "College" cases as well as Robertson v. Renshaw, supra, and they cannot now be recognized as expressing the law of this state. See Keune v. McCauley, 228 Iowa 607, 616, 293 N.W. 25; In re Estate of Cornish, 233 Iowa 596, 598, 10 N.W.2d 85, 86; Ferrell v. Stinson, 233 Iowa 1331, 1337, 11

N.W.2d 701, 704; Byers v. Byers, 242 Iowa 391, 410, 46 N.W.2d 800, 810. See also annotation, 129 A. L. R. 11, 13; 26 C. J. S., Deeds, section 46, page 702, note 28.

■ Jeppesen v. Jeppesen, supra, 249 Iowa 702, 708, 88 N.W.2d 633, 636, cites many authorities for the statement, "For a valid delivery the grantor must intend the deed to be presently effective as a transfer of title without any reservation of control thereover."

II. As previously indicated, the trial court's decision is based on his conclusions that acts and declarations of the grantor subsequent to deposit of the deed with Liggett clearly showed her intent to part with control of it and amounted to a waiver of her right to recall it. Of course plaintiff seeks to uphold the decision upon this theory.

In Byers v. Byers, 242 Iowa 391, 393, 46 N.W.2d 800, 801, the grantee of a deed, deposited with the grantor's attorneys under written instructions to deliver to the grantee upon the grantor's death " 'unless sooner called for by me,' " sought to show the grantor divested himself of the right to recall the instrument by a subsequent conversation with one of the attorneys. We held, citing numerous authorities therefor, oral evidence of such divestment must be clear, satisfactory and convincing and this requirement was not there met.

■ We do not understand it is contended there was an express waiver of the grantor's right to recall the deed here but that a waiver should be implied or inferred from Mrs. Neitzel's subsequent declarations, orally and in her letters to plaintiff, she wanted him to have the farm in the event of her death. Where evidence of this kind is relied upon as proof of waiver the intention to waive the party's right must clearly appear. Williams, assignee, v. Stroh Plbg. & Elec., Inc., 250 Iowa 599, 602, 94 N.W.2d 750, 753, and citations; 56 Am. Jur., Waiver, section 22.

■ Mrs. Neitzel's letters to plaintiff contain no express waiver of the recall provision of her letter to Liggett. According to undisputed testimony of Liggett there was no specific mention of the deed or letter to him in the conference among plaintiff, Mrs. Neitzel and the witness on December 6. Plaintiff's lips were sealed, as to this conversation, by the dead man

statute, section 622.4, Code, 1958. We can scarcely say an implied waiver of the right to recall the deed appears by the requisite clear, satisfactory and convincing proof.

Further, we see no escape from the conclusion it is not shown Mrs. Neitzel, at any time before her death, intended the deed to take effect *as a present transfer of title,* reserving to herself only the rents while she lived. Indeed we must hold the grantor had no such intent.

On the day Mrs. Neitzel wrote plaintiff for the last time she also wrote the Algona loan agent, "I own the 160 acres * * *. I have a prospective buyer for the place and may sell—not sure yet." It is clear she had no thought on November 5, date of the letter, she had parted with title. And she continued to negotiate with plaintiff until a few days before her death for sale of the farm to him.

At the conclusion of the December 6th meeting it was agreed plaintiff would have his attorney prepare a written contract and send it to Mrs. Neitzel for her approval and signature. Plaintiff did as agreed. His attorney prepared a contract providing that upon receipt of the final payment following Mrs. Neitzel's death her executor would deed the farm to plaintiff. He and his wife signed the contract. The letter to Mrs. Neitzel from plaintiff's attorney inclosing the proposed contract recommended she make a will directing her executor to deed the land to plaintiff. Thus on the very day the grantor died plaintiff and his attorney ignored the deed under which it is now claimed title was then vested in him. Such conduct is quite irreconcilable with the thought that either she or plaintiff intended the deed as a present transfer of title at any time prior to her death.

There is persuasive evidence Mrs. Neitzel intended and desired plaintiff to have the farm at her death. But the testimony is equally convincing the deed was not intended to transfer title to plaintiff prior thereto. There was therefore no effective delivery. Mere intent that plaintiff have the farm, without delivery of the deed, does not entitle him to a decree under his count 1. The result is regrettable because it defeats the wishes of the grantor and vests title in her heirs whom she did not desire to have it. In this respect the case resembles Lathrop

v. Knoop, 202 Iowa 621, 624, 625, 210 N.W. 764. It is another of many instances in which an aged owner of property does not execute his wishes in the manner required by law.

 III. Plaintiff is not entitled to prevail under his second count based upon an alleged oral contract made December 6 by which Mrs. Neitzel agreed to convey the land to plaintiff. It plainly appears what took place on this date were negotiations preliminary to the formulation and execution of a written contract. So far as shown no terms of the contract were agreed to except the amount plaintiff was to pay Mrs. Neitzel each year. The letter to her from plaintiff's attorney inclosing the proposed contract makes this clear. There was evidently no agreement upon such questions as abstract of title, the kind or time of conveyance plaintiff was to receive, payment of taxes and necessity of carrying insurance on the buildings. These questions are usually settled in real-estate contracts.

That specific performance will not be granted of such an incomplete oral land contract see Marti v. Ludeking, 193 Iowa 500, 185 N.W. 476; Starry v. Starry & Lynch, 212 Iowa 274, 279, 280, 234 N.W. 281; Hunter Investment, Inc., v. Divine Engineering, Inc., 248 Iowa 1109, 1121, 83 N.W.2d 921, 927; Annotations, 101 A. L. R. 923, 950, 122 A. L. R. 1217, 1252-4 ("And there are numerous cases supporting the rule that where the terms of a contract * * * are not fully and definitely settled in the preliminary negotiations, and a written or more formal contract embodying the completed contract is contemplated, no valid and enforceable contract exists until the execution of the written or more formal instrument.").

 It is perhaps unnecessary to refer to the settled rule that specific performance of an oral contract to convey land will not be granted, especially as against the estate of a decedent, unless proof of the contract is clear, satisfactory and convincing. Vrba v. Mason City Production Credit Assn., 248 Iowa 264, 268, 80 N.W.2d 495, 498, and citations; Peddicord v. Peddicord, 242 Iowa 555, 560, 47 N.W.2d 264, 267, and citations.

 Further, the statute of frauds, subsection 3 of section 622.32, Code, 1958, presents an insuperable obstacle to recovery under plaintiff's count 2. There are no circumstances which, under section 622.33, render 622.32(3) inapplicable. No part

of the purchase money was received by the alleged vendor. We have in mind that "purchase money", as used in this connection, is construed to mean consideration. (Williams v. Chapman, 242 Iowa 294, 311, 46 N.W.2d 56, 65.) Plaintiff did not take or hold possession of the premises under and by virtue of the alleged oral contract. He was in possession as a tenant under his lease. Certainly his possession was not exclusively referable to the claimed contract.

See in support of the views just expressed In re Estate of Runnells, 203 Iowa 144, 153, 212 N.W. 327; Ozias v. Scarcliff, 200 Iowa 1078, 205 N.W. 986; Peck v. Foggy, 199 Iowa 922, 202 N.W. 754; Annotation, 101 A. L. R. 923, 955 et seq.; 49 Am. Jur., Statute of Frauds, section 428; 81 C. J. S., Specific Performance, section 59b(1)(a), ("Thus there is no part performance * * *, in case of an agreement to convey land, where the possession is held as the promisor's tenant.").

IV. Plaintiff's count 3 is based on the claim the four letters Mrs. Neitzel wrote him are a valid holographical will, recognized by Montana statutes and decisions, devising the farm to plaintiff.

Our Code section 633.49 provides a will executed outside this state in the mode prescribed by the law of the place where executed or of the testator's domicile shall be deemed legally executed and of the same force and effect as if executed in the mode prescribed by Iowa laws, provided the will is in writing, subscribed by the testator.

Widney v. Hess, 242 Iowa 342, 346, 45 N.W.2d 233, 236, holds that under 633.49 a holographic will, valid where executed, may be admitted to probate in Iowa, and land here may pass under it notwithstanding the general common-law rule that the validity of a will devising land is determined by the law of the place where the land is. (See In re Estate of Barrie, 240 Iowa 431, 435, 35 N.W.2d 658, 661, 9 A. L. R.2d 1399.) See also annotation, 40 A. L. R.2d 698, 701, 702. Our question here, then, is whether these letters constitute a valid will under Montana law.

A statute in that state provides, "A holographic will is one that is entirely written, dated, and signed by the hand of the testator himself. It is subject to no other form * * * and need

not be witnessed." Mrs. Neitzel's four letters to plaintiff, pertinent parts of which are set out herein, are entirely written, dated and signed by her.

■■ It is fundamental there is no valid will in the absence of testamentary intent. No particular words are necessary to show such intent. It must appear only that the maker intended *by the writing in question* to dispose of his property, or part thereof, at his death. It is not necessary the maker consider it a will provided it manifests a clear intent to direct the disposition of property to take effect upon death. At least where the existence of such intent is in doubt, surrounding circumstances may be considered in determining the question.

See in support of these views In re Van Voast's Estate, 127 Mont. 450, 452–455, 266 P.2d 377, 378, 379, and citations; In re Will of Tinsley, 187 Iowa 23, 28, 174 N.W. 4, 11 A. L. R. 826, 829; 94 C. J. S., Wills, section 203; 57 Am. Jur., Wills, sections 7, 8, 12; Annotations, 54 A. L. R. 917, 919 et seq.; 21 A. L. R.2d 319; 40 A. L. R.2d 698 ("An essential to the testamentary character of a letter is that the writer intend by that very instrument to make a posthumous disposition of his property." Page 714 of 40 A.L.R.2d).

■ The burden rests upon one who claims as a devisee, under an informal writing not purporting on its face to be a will, to clearly show it was made with testamentary intent. In re Noyes' Estate, 40 Mont. 231, 106 P. 355; In re Augestad's Estate, 111 Mont. 138, 106 P.2d 1087, 1088; 2 Page on Wills, Lifetime Ed., section 901; Annotations, 54 A. L. R. 917, 932; 40 A. L. R.2d 698, 728.

■ It would be improper to consider these four letters as constituting a single will since there is no reference in any of them to any of the others. See In re Noyes' Estate, supra (at page 238 of 40 Mont., page 357 of 106 P.); Annotations, 54 A. L. R. 917, 935; 40 A. L. R.2d 698, 735. However, all of the letters may be resorted to, as in the nature of surrounding circumstances, in determining whether any of them was made with the requisite testamentary intent.

■ We cannot find any of the letters, considered either singly or—for that matter—together with one or more of the others, with or without extraneous circumstances, was made with

694

intent of Mrs. Neitzel *thereby* to dispose of her farm at her death. In fact we think testamentary intent is negatived.

It is true the letters indicate the writer was not then in good health and felt she, at 82, would not live many more years. And this is entitled to consideration. In re Van Voast's Estate, supra, at page 456 of 127 Mont., page 380 of 266 P.2d; Annotation, 40 A. L. R.2d 698, 702. But it is not clearly shown Mrs. Neitzel intended to dispose of her farm at her death by any of the letters. Rather it appears she intended to dispose of it by a contract, which never was executed, and a deed, both to be executed in the future, or, as the last two letters indicate, by the deed made September 10. The letters are essentially informative as to what the writer wanted to accomplish by the instruments therein referred to, rather than by the letters themselves.

The first letter is merely an inquiry whether plaintiff would be interested in buying the place if decedent made him a good proposition and suggesting some possible terms of sale. The second letter says, "Here is what I *am going to do* to protect you. In case I should not wake up some morning * * * I am going to Deed the farm to you (at my death) sudden death that is. It will be in an envelope in my * * * Box here in the * * * Bank. Your name will be on it ready to mail to you. This will protect you until we get a chance to make a deal of some kind. * * * Well please write me what you think of my plan * * *. I am open for your opinion." (Emphasis added.)

It is significant Mrs. Neitzel did not carry out the details of the plan she then had to protect plaintiff in the future by the execution of a deed. Plaintiff's reply to this second letter mentions "the plan you suggested." Mrs. Neitzel's third letter refers to the deed she had made out and left with Liggett, his authority to turn it over to plaintiff, and asks the selling price of the land "in case you decide to buy it." It says, "Here is what *I have done* * * * to protect you." Although Mrs. Neitzel's last letter contains the statement "It is yours to do as you like" it refers to her continuing efforts to learn the value of the farm and says, "You will hear from me soon."

It is frequently said little help is to be found from a consideration of other cases of this kind and each depends largely upon its own facts. In re Noyes' Estate, supra, 40 Mont.

231, 241, 106 P. 355, 358; In re Augestad's Estate, 111 Mont. 138, 106 P.2d 1087, 1088; In re Zech's Estate, 70 S. D. 622, 20 N.W.2d 229, 231.

However, it seems fairly well settled that statements referring to something decedent intends to do in the future, rather than to something then being done, are not testamentary. In re Augestad's Estate, supra, 111 Mont. 138, 106 P.2d 1087; Annotations, 54 A. L. R. 917, 922 et seq.; 40 A. L. R.2d 698, 714 et seq. The decision in Barney v. Hays, 11 Mont. 571, 29 P. 282, 28 Am. St. Rep. 495, is limited by In re Noyes' Estate, supra, 40 Mont. 231, 106 P. 355, 359, and In re Watts' Estate, 117 Mont. 505, 160 P.2d 492, 500, to cases where the facts and circumstances are substantially the same and is therefore not applicable here.

It is also generally held a letter informing the recipient what the writer would like him to have after the writer's death but indicating such desire has been effected by some other means or instrument is merely informative, not testamentary. Annotations, 40 A.L.R.2d 698, 719, 720; 54 A. L. R. 917, 925, 926. Precedents of this type include In re Watts' Estate, supra, 117 Mont. 505, 160 P.2d 492; In re Noyes' Estate, supra, 40 Mont. 231, 106 P. 355; In re Major's Estate, 89 Cal. App. 238, 264 P. 542; In re Zech's Estate, supra, 70 S. D. 622, 20 N.W.2d 229; Caywood v. Caywood, Tex. Civ. App., 216 S.W.2d 821.

It is also the general rule, which seems applicable here, that where there is a recital in a will to the effect the testator has, by some other instrument, given someone property when in fact he has not done so, or the instrument proves ineffectual, such a recital does not disclose an intent to give by the will and in such case resort must be had to the other instrument, not to the will. In re Watts' Estate, supra, 117 Mont. 505, 160 P.2d 492, 499, and citations; In re Burkman's Estate, 71 S. D. 648, 28 N.W.2d 839, 840. See also In re Will of Adkins, 179 Iowa 1025, 162 N.W. 193.

As on the issue of delivery of the deed our decision upon the question of holographic will is regrettable. However, we feel it would be an unwise and perhaps dangerous precedent to hold any of these letters constitutes a valid will of the farm in question. Legal heirs should not be disinherited unless the

intent to do so is evidenced in the manner required by law. We are therefore compelled to reverse the decree and remand the case for decree quieting title in defendant heirs.—Reversed and remanded.

All JUSTICES concur.