No. 93-466

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

IN THE MATTER OF THE ESTATE OF
JULIAN RAMIREZ, JR., Deceased.

BETTY J. RAMIREZ,

      Petitioner and Appellant,

NICHOLAS REID RAMIREZ,

      Respondent.

FILED

FEB 22 1994

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Hon. Maurice R. Colberg, Jr., Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Craig W. Holt, Attorney at Law,
Billings, Montana

      For Respondent:

          Damon L. Gannett, Gannett & Ventrell,
Billings, Montana

Submitted on Briefs:  January 27, 1994

Decided:  February 22, 1994

Filed:

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Betty J. Ramirez petitioned the District Court of the Thirteenth Judicial District, in Yellowstone County, to admit letters authored by her deceased son, Julian Ramirez, to probate as his holographic will. After hearing evidence, the District Court denied admission of the proposed will to probate. The petitioner appeals from the order of the District Court. We reverse.

The following issue is presented on appeal:

Did the District Court err when it concluded that the documents offered as the holographic will of Julian Ramirez were unsupported by testamentary intent?

<u>FACTUAL BACKGROUND</u>

Julian Ramirez, Jr., was incarcerated in the Yellowstone County Detention Facility between November 21, 1991, and December 3, 1991. During that time, he mailed a one-page, handwritten letter to his sister, Julie Ramirez, which contained the following unedited language:

> Im gonna stay with mom and help her out mom did alot of things for me she paid off my car and always got me out of jail thats why I think mom should have everything if anything ever happens to me I also think she should have nicolas because Elaine doesnt take care of him but mom will take care of him

Between January 27, 1992, and February 28, 1992, Julian was again incarcerated in the Yellowstone County Detention Facility. During this time, he wrote another one-page letter to his sister, Julie. That letter stated in part (also unedited):

2

> Im so tired of living I wish I could just kill myself  If
> anything ever does happen to me or I do something to
> myself tell mom I want her to have everything of mine

Neither letter was dated, but both were signed "Julian Ramirez."

Julian Ramirez died as a result of an automobile accident on September 21, 1992, at the age of 22 years. At the time of his death, Julian had one child, a son, Nicholas, who is now three years old. There is no legal relationship between Julian and the child's mother, Elaine Coburn.

On December 29, 1992, Betty Ramirez, Julian's mother, filed a petition for formal probate of will, determination of testacy and heirs, and appointment of personal representative. She attached as Julian's holographic will, the second letter he had written to Julie. Nicholas, through his attorney, objected to the admission of the alleged will. The District Court held a hearing on the matter on March 11, 1993. At the hearing, Betty offered the first letter Julian sent to Julie to supplement the letter she attached to the formal probate petition. On July 19, 1993, the court issued its findings of fact, conclusions of law, and order, and denied admission of the letters to probate as holographic wills.

Did the District Court err when it concluded that the documents offered as the holographic will of Julian Ramirez were unsupported by testamentary intent?

In a nonjury trial, this Court will not disturb the district court's findings of fact unless they are clearly erroneous. Rule 52(a), M.R.Civ.P.; *Flikkema v. Kimm* (1992), 255 Mont. 34, 37, 839 P.2d 1293, 1295. Our standard of review for questions of law is to

3

determine whether the district court has correctly interpreted the law. *Schaub v. Vita Rich Dairy* (1989), 236 Mont. 389, 391, 770 P.2d 522, 523. The basis for this standard of review is that no discretion is involved when a tribunal arrives at a conclusion of law; the tribunal either correctly or incorrectly applies the law. *Flikkema*, 839 P.2d at 1295.

There are three requirements for a valid holographic will in Montana. An individual who is eighteen years or older and is of sound mind has the capacity to make a will. Section 72-2-301, MCA (1991). A holographic will meets the formalities of execution if its material provisions are in the handwriting of the testator and signed by the testator. Section 72-2-303, MCA (1991). Finally, the individual must have testamentary intent; he must intend that the document will dispose of his property after death. *See Estate of Coleman* (1961), 139 Mont. 58, 359 P.2d 502; *In re Van Voast's Estate* (1954), 127 Mont. 450, 266 P.2d 377; *In re Augestad's Estate* (1940), 111 Mont. 138, 106 P.2d 1087.

There is no dispute that Julian Ramirez had the capacity to make a will, and the District Court concluded that both letters met the statutory formalities for the execution of a holographic will. However, the District Court refused to admit the letters as a holographic will because the District Court concluded that both letters and the surrounding circumstances failed to reflect sufficient testamentary intent.

In previously addressing this issue, this Court has adopted several well-settled rules. The intention that must be present is the intention to dispose of property after the testator's death. *Van Voast*, 266 P.2d at 378-79. There is no requirement that the testator realize that he is making a will, nor are there any particular words necessary to show a testamentary intent. *Van Voast*, 266 P.2d at 378. Because it is common for people to preface their wishes or directions with expressions like "if anything happens to me," courts have long considered such language to indicate testamentary intent. *Coleman*, 359 P.2d at 503.

Whether sufficient testamentary intent is present in an alleged will should be determined by first looking to the writing itself. *Van Voast*, 266 P.2d at 378. However, if the intent is not clear from the writing, then the surrounding circumstances may be considered. *Van Voast*, 266 P.2d at 378.

In *Augestad*, 106 P.2d at 1088, we said that "[t]here is no definite fixed rule by which testamentary intent may be gauged. Each case must stand on its own peculiar facts and circumstances." There, we held that rather than expressing testamentary intent, the letter of the decedent expressed an intention, at some time in the future, to make a will.

The District Court mistakenly concluded that Betty, the proponent of the will, had the burden to show the existence of Julian's testamentary intent. According to § 72-3-310, MCA, it is the <u>contestant</u> of a will who has the burden of establishing <u>lack</u> of

5

testamentary intent. Our review of the record causes us to conclude that that burden was not satisfied.

In this case, we conclude that both the document itself and the surrounding circumstances indicate testamentary intent. Julian was in jail, contemplating his death, and according to his sister, had asked her to save the letters and tell his mother about their content. On its face, it is abundantly clear that Julian's second letter to "tell mom I want her to have everything of mine" indicates his intent that his property should pass to his mother upon his death.

We therefore reverse the order of the District Court and remand this case to the District Court for admission of the proposed will of Julian Ramirez to probate.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

6