No. 01-668

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 171

IN THE MATTER OF THE ESTATE OF:

JAMES M. HALL, a/k/a JIM HALL,

Deceased.

APPEAL FROM:   District Court of the Eighth Judicial District,
               In and for the County of Cascade,
               The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

              Kathryn S. Syth, Gillen, LaRance & Syth, P.C., Billings, Montana

        For Respondent:

              Ross W. Cannon, Cannon & Sheehy, Helena, Montana

                                Submitted on Briefs:  March 14, 2002

                                              Decided:  July 30, 2002

Filed:

              _____
                                Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1   Sandra Kay Ault appeals from the Findings of Fact, Conclusions of Law and Order of the Eighth Judicial District Court, Cascade County.  We affirm.

¶2   The following issue is dispositive of this appeal:

¶3   Did the District Court err in admitting the Joint Will to formal probate?

BACKGROUND

¶4   James Mylen Hall ("Jim") died on October 23, 1998.  At the time of his death, he was 75 years old and lived in Cascade County, Montana.  His wife, Betty Lou Hall ("Betty"), and two daughters from a previous marriage, Sandra Kay Ault ("Sandra") and Charlotte Rae Hall ("Charlotte"), survived him.

¶5   Jim first executed a will on April 18, 1984 (the "Original Will").  Approximately thirteen years later, Jim and Betty's attorney, Ross Cannon, transmitted to them a draft of a joint will (the "Joint Will").  On June 4, 1997, Jim and Betty met at Cannon's office to discuss the draft.  After making several changes, Jim and Betty apparently agreed on the terms of the Joint Will.  Jim and Betty were prepared to execute the Joint Will once Cannon sent them a final version.

¶6   At the conclusion of the meeting, however, Jim asked Cannon if the draft could stand as a will until Cannon sent them a final version.  Cannon said that it would be valid if Jim and Betty executed the draft and he notarized it.  Betty testified that no one else was in the office at the time to serve as an attesting

2

witness.  Jim and Betty, therefore, proceeded to sign the Joint Will and Cannon notarized it without anyone else present.

¶7   When they returned home from the meeting, Jim apparently told Betty to tear up the Original Will, which Betty did.  After Jim's death, Betty applied to informally probate the Joint Will.  Sandra objected to the informal probate and requested formal probate of the Original Will.

¶8   On August 9, 2001, Judge McKittrick heard the will contest.  He issued the Order admitting the Joint Will to probate on August 27, 2001.  Sandra appealed.

### STANDARD OF REVIEW

¶9   Sandra argues that the judicial interpretation and construction of a will are questions of law.  This appeal, however, does not involve interpreting or constructing a will.  The dispositive issue is whether the District Court properly admitted the disputed will to probate.  Determining whether a court properly admitted a will involves both questions of law and fact.  *See In re Estate of Brooks* (1996), 279 Mont. 516, 519, 927 P.2d 1024, 1026.  In *Brooks*, we described our standard as follows:

> We will not disturb a district court's findings of fact unless they are clearly erroneous.  A court's findings are clearly erroneous if they are not supported by substantial credible evidence, the court has misapprehended the effect of the evidence, or our review of the record convinces us that a mistake has been committed.  We review a district court's conclusions of

3

law to determine whether the interpretation of the law is correct. [Citations omitted.]

*Brooks*, 279 Mont. at 519, 927 P.2d at 1026.

DISCUSSION

¶10 Did the District Court err in admitting the Joint Will to formal probate?

¶11 In contested cases, the proponent of a will must establish that the testator duly executed the will. *See* § 72-3-310, MCA; *Brooks*, 279 Mont. at 519, 927 P.2d at 1026. For a will to be valid, two people typically must witness the testator signing the will and then sign the will themselves. *See* § 72-2-522(1)(c), MCA. If two individuals do not properly witness the document, § 72-2-523, MCA, provides that the document may still be treated as if it had been executed under certain circumstances. One such circumstance is if the proponent of the document establishes by clear and convincing evidence that the decedent intended the document to be the decedent's will. *See* § 72-2-523, MCA; *Brooks*, 279 Mont. at 522, 927 P.2d at 1027.

¶12 Sandra urges this Court not to use § 72-2-523, MCA, "to circumvent the statute requiring two witnesses to the execution of a will." Jim and Betty's failure to use witnesses, according to Sandra, was not an innocent omission on their part. She also expresses concern that the improperly witnessed Joint Will materially altered a long-standing agreement to divide the property. She primarily argues, however, that the Joint Will

4

should be invalid as a matter of law because no one properly witnessed it.

¶13 Sandra's numerous arguments about why the will was improperly witnessed are irrelevant to this appeal. Neither party disputes that no witnesses were present at the execution of Jim and Betty's Joint Will as required by § 72-2-522, MCA. In the absence of attesting witnesses, § 72-2-523, MCA, affords a means of validating a will for which the Montana Legislature expressly provides. The only question before this Court, therefore, is whether the District Court erred in concluding that Jim intended the Joint Will to be his will under § 72-2-523, MCA. We conclude that the court did not err.

¶14 The District Court made several findings of fact that supported its conclusion. In particular, it noted that the Joint Will specifically revoked all previous wills and codicils made by either Jim or Betty. Furthermore, the court found that, after they had executed the Joint Will, Jim directed Betty to destroy the Original Will.

¶15 Sandra does not dispute any of the court's factual findings. She argues only that Betty testified that she and Jim had not executed the will even after they had signed it. In making this argument, she points to the following testimony:

```
Question:      Do you know if [Jim] gave [Sandra and
               Charlotte] a copy of the new will?
Answer:    I don't believe he did, no.
Question:      Do you know why?
Answer:    Well, I guess because we didn't have the
           completed draft without all the scribbles on
           it.
Question: So he thought that will was not good yet?
```

5

```
Answer:    No, he was sure it was good, but he didn't
           give it to the girls.  And we didn't give it
           to my son.  We didn't give it to anybody.
Question: Why?
Answer:    Because it wasn't completely finished the way
           Ross was going to finish it.
```

¶16  This testimony may suggest that Betty believed that the Joint Will was not in a final form because of "all the scribbles on it."  Nevertheless, she immediately goes on to state that she believed the will was good.  When asked if it were Jim's and her intent for the Joint Will to stand as a will until they executed another one, she responded, "Yes, it was."  The court could reasonably interpret this testimony to mean that Jim and Betty expected the Joint Will to stand as a will until Cannon provided one in a cleaner, more final form.  Sandra points to no other evidence that suggests that Jim did not intend for the Joint Will to be his will.

¶17  For these reasons, we conclude that the District Court did not err in admitting the Joint Will into final probate.  Because Jim directed Betty to destroy the Original Will, we also conclude that the District Court did not err in finding that these acts were acts of revocation of the Original Will under § 72-2-527, MCA.

¶18  Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ TERRY N. TRIEWEILER
/S/ PATRICIA COTTER
/S/ JIM RICE

6