# FILED

October 1 2013

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 13-0189

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2013 MT 283

IN THE MATTER OF THE ESTATE OF
CATHERINE MARIE HARLESS,

        Deceased.

APPEAL FROM:    District Court of the Fifth Judicial District,
In and For the County of Beaverhead, Cause No. DP-11-5237
Honorable Loren Tucker, Presiding Judge

COUNSEL OF RECORD:

        For Appellant Linda Hyde:

            Stephanie Gehres Kruer; Kruer Law Firm, P.C.; Sheridan, Montana

        For Appellee Kelli Martin:

            J. Blaine "J.B." Anderson, Jr.; Attorney at Law; Dillon, Montana

Submitted on Briefs:  September 4, 2013

Decided:   October 1, 2013

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Catherine Harless, deceased, was the sister of Linda Hyde and the mother of Kelli Martin.  Martin petitioned to be appointed personal representative to probate her mother's estate.  Hyde opposed the petition, asserting Harless had executed a will in 2002 (hereinafter Will) naming Hyde as executrix.  The Fifth Judicial District Court ruled that Harless had revoked the 2002 Will upon which Hyde was relying, and that Harless therefore died intestate and her daughter was entitled to be appointed personal representative.  Hyde appeals.  We reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2     In May 2002, then-fifty-five-year-old Catherine Harless was preparing to depart on a season-long work experience aboard a fishing ship working in Alaskan waters.  Prior to departure, she acquired a form "Last Will and Testament" which she completed in her handwriting on May 28, 2002.  In this Will, she expressly devised $1.00 each to her two daughters (Kelli Martin and Heather Gordon) and $1.00 each to her two grandchildren.  She also expressly declared that her daughters and grandchildren were "not allowed" to have anything else of her belongings or to be on any real property Harless owned.

¶3     Harless then devised all her personal belongings, real property, dwellings, and animals to her sister Linda Hyde, or alternatively—if for any reason Hyde was unable to fulfill Harless's expressed wishes—to Hyde's two sons, Ted and Todd Holverson (hereinafter Ted and Todd).  She named Hyde as executrix and the Will was signed by a notary and two witnesses.  However, the parties dispute whether Harless properly signed the Will.

¶4    In October 2003, Harless executed a Warranty Deed granting real property she owned in Montana to Ted. She later claimed she had deeded the property to Ted based upon a mutual agreement that Ted would return the property to her at any time upon her request. Harless asserted that in 2007 she asked Ted to return the property but he refused. As a result of Ted's refusal, in July 2008, Harless sued Ted for breach of contract, fraud, and undue influence, among other things. This litigation remains pending.

¶5    Shortly thereafter, Harless wrote a letter to Hyde declaring that she (Harless) was out of Hyde's life and the lives of Hyde's family, including Hyde's husband and sons Ted and Todd. In 2009, at a deposition taken in her legal action against Ted, Harless stated that her 2002 Will was "no longer valid" because it was "a joke."

¶6    Harless did not execute another will prior to her death in California on October 2, 2010. In December 2010, Hyde commenced probate proceedings in the Superior Court of California based upon Harless's 2002 Will. In March 2011, the California Court dismissed Hyde's action in a "minute order," stating that the 2002 Will was not a validly executed will because it did not contain Harless's signature. In May 2011, Martin petitioned Montana's Fifth Judicial District Court to (1) adjudicate that her mother died intestate, (2) appoint her as personal representative, and (3) determine the heirs to her mother's estate. Hyde opposed Martin's petition.

¶7    In February 2013, the District Court ruled that Harless died intestate and Martin was entitled under the priorities set forth in § 72-3-502, MCA, to be appointed as personal representative. The court found that Harless had not signed the Will because her name was printed rather than written in cursive script. The court concluded that the

3

California probate court's determination that Harless's 2002 Will was not a valid will was "persuasive" and agreed that the Will was invalid. Additionally, the court concluded that three separate actions taken by Harless constituted a revocation of the 2002 Will: (1) suing her nephew who was an heir under the Will; (2) writing Hyde a letter in 2008 denouncing a relationship with her and her family; and (3) stating in her 2009 deposition that the Will was not valid and was a joke. It is from the District Court's February 2013 order that Hyde appeals.

## ISSUES

¶8     Hyde raises the following issues on appeal:

¶9     Did the District Court incorrectly apply the Montana Uniform Probate Code to the holographic writing Hyde claims is Harless's Will?

¶10    Did the District Court err by concluding that Harless revoked the subject Will?

¶11    Did the District Court misapprehend the evidence concerning the testamentary intent of Harless?

¶12    Did the District Court err by relying on an informal ruling in a separate California probate case concerning Harless's estate?

## STANDARD OF REVIEW

¶13    We review a district court's findings of fact to ascertain whether they are clearly erroneous. A finding is clearly erroneous if it is not supported by substantial credible evidence, if the trial court has misapprehended the effect of the evidence, or if a review of the record leaves us with the definite and firm conviction that a mistake has been

4

committed. We review a district court's conclusions of law for correctness. *In re Estate of Hannum*, 2012 MT 171, ¶ 19, 366 Mont. 1, 285 P.3d 463 (internal citation omitted).

## DISCUSSION

¶14 *Did the District Court err in its application of the Montana Uniform Probate Code to the holographic writing Hyde claims is Harless's Will?*

¶15 Hyde argues that the District Court repeatedly relied upon incorrect statutes in its determination that Harless's 2002 Will was not entitled to probate under Montana law. Rather than recite and analyze the alleged statutory errors, we will look to the correct statutes and determine if they support the court's conclusion.

¶16 We note at the outset that, as the proponent of a will in a contested case, Hyde has the burden of presenting a prima facie case of "due execution" of the will. Section 72-3-310, MCA; *In re Estate of Brooks*, 279 Mont. 516, 521-22, 927 P.2d 1024, 1027 (1996); *In re Estate of Hall*, 2002 MT 171, ¶ 11, 310 Mont. 486, 51 P.3d 1134. Section 72-2-522(1), MCA, contains the requirements of a duly executed will and provides:

> (1) Except as provided in 72-2-523, 72-2-526, 72-2-533, and subsection (2) of this section, a will must be:
>     (a) in writing;
>     (b) signed by the testator or in the testator's name by some other individual in the testator's conscious presence and by the testator's direction; and
>     (c) signed by at least two individuals, each of whom signed within a reasonable time after having witnessed either the signing of the will as described in subsection (1)(b) or the testator's acknowledgment of that signature or acknowledgment of the will.
>     (2) A will that does not comply with subsection (1) is valid as a holographic will, whether or not witnessed, if the signature and material portions of the document are in the testator's handwriting.
>     (3) Intent that the document constitute the testator's will may be established by extrinsic evidence, including, for holographic wills, portions of the document that are not in the testator's handwriting.

5

¶17 Hyde asserts that Harless's Will was duly executed and satisfies the requirements set forth in § 72-2-522(1)(a)-(c), MCA. She maintains that Harless completed the Will in her own handwriting, using both block printing and cursive writing, which was typical for Harless. Hyde acknowledges that Harless may not have signed the Will in the place designated on the form for her signature but explains that the notary inadvertently signed the Will "in [Harless's spot]." Relying on *In re Estate of Kuralt*, 1999 MT 111, ¶ 3 n. 1, 294 Mont. 354, 981 P.2d 771, in which we concluded that a letter signed with the single printed initial "C" constituted a valid signature to a will codicil, Hyde maintains that Harless's printed signature is adequate to satisfy the requirements of § 72-2-522, MCA.

¶18 Martin counters that her mother did not sign the 2002 document because she did not intend it to be her will and therefore it is not a valid will. She claims that Harless knew how to sign a legal document and referred the Court to the Warranty Deed with Ted and a 2003 landlord-tenant agreement executed by Harless.

¶19 If Harless's printed name constitutes a valid signature, Harless's Will satisfies the requirements of § 72-2-522, MCA. Because the validity of the signature is brought into question, however, as did the District Court and the parties, we next consider the Will under § 72-2-523, MCA. As we stated in *Edwards*, immediately before analyzing the applicability of § 72-2-523, MCA, to the will in that case: "Even absent due execution . . . document still can be admitted to probate as a valid will under certain circumstances." *Edwards*, 279 Mont. at 522, 927 P.2d at 1027. Section 72-2-523, MCA, captioned "[w]ritings intended as wills," provides in relevant part:

> Although a document . . . was not executed in compliance with 72-2-522, the document . . . is treated as if it had been executed in compliance with that section if the proponent of the document . . . establishes by clear and convincing evidence that the decedent intended the document . . . to constitute:
>     (1) the decedent's will;
>     (2) a partial or complete revocation of the will;
>     (3) an addition to or an alteration of the will . . . .

¶20    Both the notary and one of the witnesses to the 2002 Will testified that the two witnesses and the notary were all present when Harless signed the document in block printed letters on the second page of the document and that it was presented to them as her Last Will and Testament. Moreover, the record reflects that Harless acknowledged the document as her will in 2009 in a sworn deposition. These undisputed facts establish that Harless intended the 2002 Will to be her will under § 72-2-523, MCA.

¶21    In light of the foregoing, we conclude Harless executed a valid will in 2002 under either §§ 72-2-522 or -523, MCA. We therefore conclude Hyde, as the proponent of the Will, has met her burden of presenting a prima facie case of due execution as required by § 72-3-310, MCA. We next address whether Harless revoked this Will.

¶22    *Did the District Court err by concluding that Harless revoked the subject Will?*

¶23    There are finite and specific statutory means by which a will may be revoked. Section 72-2-527(1)(a), MCA, provides that a will or any part of a will is revoked when the testator executes a later will expressly revoking all or part of a previous will. Section 72-2-527(1)(b), MCA, alternatively provides that a testator may take an action that effectively demonstrates his or her intent to revoke a will, by burning, tearing, canceling, obliterating, marking on, or destroying the will or any part of it. These are the sole means

7

of revocation under the statute. As Hyde notes, Harless took none of these actions. She did not execute a subsequent will nor did she deface or destroy the 2002 Will. Hyde maintains that the actions Harless took—suing her nephew, writing a nasty letter to her sister, and remarking in a deposition that the Will was not "valid" and was a "joke"—simply are not actions that suffice under law to revoke a duly executed will.

¶24 Martin, on the other hand, asserts that both the letter to Hyde and the complaint in Harless's action against Ted are acts that illustrate Harless's intent to revoke her Will under §§ 72-2-522[1] and -523, MCA. Martin relies on *Kuralt* but we find that case distinguishable. In *Kuralt*, Kuralt's letter was intended to be a will expressly devising certain real property to an identified heir; therefore it was appropriately analyzed under § 72-2-523, MCA. Here, Harless's letter to Hyde was not intended to be a will, nor did it provide for distribution of Harless's assets upon Harless's death. Similarly, Harless's complaint against Ted was not intended as a will. As such, § 72-2-523, MCA, does not apply; rather, § 72-2-527, MCA, the statute that specifically describes the method for revoking a will is applicable.

¶25 As the parties note, and as evidenced by the colorful and adamant language used by Harless in her correspondence with her family, Harless was disposed to sharp mood swings and histrionics. It is apparent that she was inclined at times to change her mind. However, we are not at liberty under the applicable statutes to conclude that Harless's

---

[1] Section 72-2-522, MCA, addressing the execution of holographic wills, does not include a reference to "a holographic revocation of a will," as argued by Martin. This statute, on its face, does not address revocation of a will.

conduct sufficed to revoke her Will, as our discretion is cabined by the terms of § 72-2-527, MCA. Harless did not satisfy the terms of this statute, and neither her letter to her sister nor her complaint against her nephew qualify as actions sufficient to revoke a will under the governing statute. We further note that § 72-2-528, MCA, provides that a change of circumstances does not revoke a will or any part of it. We therefore conclude that Harless's 2002 Will is valid, and that it has not been revoked.

## CONCLUSION

¶26 Having concluded that Harless's 2002 Will was a valid will that Harless did not revoke, we need not address Hyde's remaining issues. We reverse the order of the District Court and remand with instructions that Harless's 2002 Will be probated.


/S/ PATRICIA COTTER


We Concur:


/S/ MICHAEL E WHEAT
/S/ JIM RICE
/S/ LAURIE McKINNON
/S/ BRIAN MORRIS