DA 25-0341

FILED

11/12/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0341

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 259

IN THE MATTER OF THE ESTATE OF:

CORBIN DAMJANOVICH,

      Deceased.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
               In and For the County of Yellowstone, Cause No. DP 24-58
               Honorable Mary Jane Knisely, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          William A. D'Alton, D'Alton Law Firm, P.C., Billings, Montana

          Mark D. Parker, Parker, Heitz & Cosgrove, PLLC, Billings, Montana

      For Appellee:

          Andrew T. Billstein, Anna M. Reed, Shane Coleman, Daniel Beierwaltes, Billstein, Monson & Small PLLC, Billings, Montana

Submitted on Briefs:  September 17, 2025

Decided:  November 12, 2025

Filed:

                    _____
                              Clerk

Justice Katherine Bidegaray delivered the Opinion of the Court.

¶1	Nicolette Damjanovich (Nicolette) appeals the May 9, 2025 judgment of the Montana Thirteenth Judicial District Court, Yellowstone County, admitting to probate a December 9, 2015 handwritten document as the holographic will of her father, Corbin Damjanovich (Corbin); construing the document to create a "power of appointment" in favor of her father's sister, Tracy Barlow (Barlow); and appointing Barlow as personal representative of the estate. We address the following restated issues:

1. *Was the 2015 document a valid holographic will?*

2. *Did the 2015 document effectively dispose of Corbin's estate by creating a power of appointment or a trust?*

We affirm in part, reverse in part, and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2	Corbin died on February 6, 2024, unmarried and leaving behind two adult children, Nicolette and Derek Damjanovich (Derek). At the time of his death, Corbin was domiciled in Yellowstone County. On February 16, 2024, Corbin's sister, Barlow, and his cousin, Carl Openshaw (Openshaw), petitioned for informal appointment as co-personal representatives of the estate, and the clerk of district court issued an order granting that application.

¶3	Sometime afterward, Nicolette and Derek discovered a handwritten and signed document dated December 9, 2015, that appeared to be Corbin's will. In October 2024, Barlow and Openshaw filed a petition for formal probate of the December 9, 2015 handwritten document, a determination of testacy, and confirmation of their appointment

2

as co-personal representatives. They alleged that the 2015 writing was Corbin's holographic will, naming Barlow as "executor" and "sole devisee" and expressing Corbin's wish "to establish a trust."

¶4 The December 9, 2015 document reads, in its entirety (sic):

> I Corbin Damjanovich being of sound mind would like it to be acknowledged that in the event of my death I would like my sister Tracy Barlow to be the executor of my estate. It is my wish that she would over seeing the dispursement of funds, such as investments, pensions, life insurance polocies and or cash and assets. I would like it to be up to her descression how to and when to devide and dispurse cash and or assets. It will also be at her discression to take maintinence fees.
>
> [Signed] Corbin Damjanovich

¶5 The parties stipulated that the handwriting and signature were Corbin's and that no evidence suggested he lacked capacity or was subject to undue influence or fraud. In November 2024, Nicolette filed a formal objection to the petition, arguing that the document lacked testamentary intent and did not create a trust or any other mechanism for distributing the estate. She contended the estate should pass through intestacy to her and Derek, as Corbin's only heirs, and that she and Derek, not Barlow or Openshaw, should be appointed co-personal representatives of the estate.

¶6 Barlow and Openshaw answered by asserting that the December 9, 2015 document was a valid holographic will that appointed Barlow as executor/personal representative of Corbin's estate and disposed of Corbin's property by creating in Barlow a "general power of appointment." Barlow argued that the power of appointment gave her sole discretion "to determine who would receive all of [Corbin's] assets and how the assets would be received." Although she acknowledged that a general power of appointment authorized

3

her to transfer Corbin's property (which, "very broadly," included all his "assets") "to anyone, including herself," Barlow intended to exercise the power "to establish a trust benefitting Nicolette and Derek, rather than transferring any of Corbin's property to herself or anyone else."

¶7    At the February 25, 2025 contested case hearing, the District Court received testimony from Brad Makinen, Corbin's life-long friend, and from Nicolette and Derek. Over Nicolette's objection, Makinen testified he and Corbin had discussed "[w]hat we're going to do for trusts and this, that and with our kids." Makinen said Corbin wanted Barlow and Openshaw "to make sure that his kids were well taken care of," but "did not want [the kids] to have control of the money yet" and instead, get it "20 years down the road." Nicolette testified that her father wanted her and Derek to have and manage his property, including his numerous rental properties. Derek asked the court to honor his father's wishes that Barlow "oversee how it goes." No party challenged Corbin's capacity or the authenticity of the writing.

¶8    On May 9, 2025, the District Court admitted the 2015 document to probate as a valid holographic will, concluded it created a power of appointment in Barlow, confirmed Barlow as personal representative to serve without bond, and ended Openshaw's co-appointment. Nicolette timely appeals.[1] The only dispute on appeal is the legal effect of the 2015 writing.

---

[1] Only Barlow responds as Appellee; Openshaw does not participate in this appeal.

## STANDARD OF REVIEW

¶9      The interpretation, construction, and legal effect of a will present questions of law. *In re Estate of Ayers*, 2007 MT 155, ¶ 12, 338 Mont. 12, 161 P.3d 833. Likewise, the interpretation and application of a statute present a question of law. *Dirk Irvin Inc. v. State*, 2013 MT 272, ¶ 17, 372 Mont. 58, 310 P.3d 524. We review a district court's conclusions of law de novo for correctness. *In re D.E.*, 2018 MT 196, ¶ 21, 392 Mont. 297, 423 P.3d 586. Whether a testator possessed the requisite testamentary intent to create a will is a question of fact. *In re Estate of Kuralt (Kuralt I)*, 1999 MT 111, ¶ 26, 294 Mont. 354, 981 P.2d 771. However, whether a will was valid and properly admitted to probate is ultimately a question of law. *In re Estate of Brooks*, 279 Mont. 516, 927 P.2d 1024 (1996). Mixed questions of law and fact are reviewed de novo when application of legal principles to undisputed facts determines the outcome. *In re Estate of Cook*, 2020 MT 240, ¶ 27, 401 Mont. 374, 472 P.3d 1179. Accordingly, we review de novo the District Court's conclusions regarding the validity of the holographic will and its determination that the writing created a power of appointment, while we defer to the District Court's factual findings on testamentary intent unless clearly erroneous.

## DISCUSSION

¶10     *1. Was the 2015 document a valid holographic will?*

¶11     When interpreting wills, courts are guided by the bedrock principle of honoring the testator's intent, so long as it is expressed in a manner consistent with statutory requirements. *In re Kuralt (Kuralt II)*, 2000 MT 359, ¶ 17, 303 Mont. 335, 15 P.3d 931. That principle guides construction of valid dispositive provisions but cannot supply

5

dispositive intent where the statutory requirements are not met. Although Montana law favors effectuating a testator's intent, courts may not infer dispositive provisions that the testator did not express in the instrument itself. *See* § 72-3-315, MCA (requiring an order of partial intestacy where a will fails to dispose of property). While certain presumptions apply when construing wills, including a presumption disfavoring intestacy,[2] courts may not write a will the testator did not write to achieve testacy. *In re Estate of DeLong*, 242 Mont. 15, 18, 788 P.2d 889, 891 (1990).[3]

### A. Burden of Proof in Will Contests

¶12 At proceedings below, each side argued that the other had the burden of proof. To clarify, in a will contest, the proponent must first show due execution of the instrument and, for a holographic will, that the signature and material portions are in the testator's handwriting. Sections 72-3-310, 72-2-522, -526, MCA; *Brooks*, 279 Mont. at 523, 927 P.2d at 1028. Upon that showing, a statutory presumption of testamentary intent arises, shifting to the contestant the burden to prove lack of testamentary intent or capacity. Section 72-3-310, MCA; *Cook*, ¶ 44. Here, the parties stipulated that the 2015 writing was in Corbin's handwriting and bore his signature. Accordingly, the presumption of testamentary intent arose, and Nicolette bore the burden to rebut it with contrary evidence.

---

[2] "The presumption is that where a testator makes a will he intends to dispose of his whole estate, and if possible the will should be so interpreted as to avoid total or partial intestacy." *In re Benolken's Estate*, 122 Mont. 425, 436, 205 P.2d 1141, 1147 (1939).

[3] "A court may not, under the guise of construction, make a will for a testator to take the place of the one made by him if its intent is plain. And this is so regardless of the consequences of the testator's will." *In re Beldon's Estate*, 77 P.2d 1052, 1054 (Cal. 1938) (internal citations omitted).

¶13　Nicolette argued below that § 72-2-523, MCA, required Barlow to prove by clear and convincing evidence that Corbin intended the document to be his will. That statute provides an alternative means for validating an otherwise defective instrument, *In re Estate of Hall*, 2002 MT 171, ¶¶ 13, 17, 310 Mont. 486, 51 P.3d 1134, but it does not apply where, as here, a holographic instrument is duly executed under § 72-2-522, MCA. *In re Johnson*, 2002 MT 341, ¶¶ 10-17, 313 Mont. 316, 60 P.3d 1014 (comparing effects of §§ 72-2-522 and -523, MCA); *Brooks*, 279 Mont. at 526, 97 P.2d at 1030. Thus, Barlow had no burden under § 72-2-523, MCA, to establish testamentary intent.

**B. Requirements for a Valid Holographic Will**

¶14　To be valid, a holographic will must (1) be made by an individual 18 years or older and of sound mind; (2) be signed by the testator, with its material portions in the testator's handwriting; and (3) reflect testamentary intent, i.e., an intention that the document dispose of property upon death. *In re Lambert*, 2006 MT 229, ¶¶ 7, 21-24, 333 Mont. 444, 143 P.3d 426 (citing §§ 72-2-521, -522, MCA); *Johnson*, ¶¶ 10-17; *In re Ramirez*, 264 Mont. 33, 35-37, 869 P.2d 263, 265 (1994).

¶15　Because the parties stipulated to Corbin's handwriting and signature, the statutory presumption of testamentary intent under § 72-3-310, MCA, arose, shifting the burden to Nicolette to rebut it. Corbin's handwritten language—"in the event of [his] death," designating Barlow "to be the executor of [his] estate" and to "oversee the disbursement of funds . . . and assets"—demonstrates an intent for the document to operate only at his death. This language satisfies the threshold requirement of testamentary intent.

¶16 Under Montana law, a "will," as statutorily defined, may do no more than "merely appoint[] an executor." Section 72-1-103(59), MCA. Here, the 2015 document is a valid holographic will for the limited purpose of appointing Barlow as personal representative. Whether it contains an operative disposition of property is a separate question. *Accord DeLong*, 242 Mont. at 16-17, 19-20, 788 P.2d at 889-91 (will was valid only as to appointment of personal representative but ineffective to dispose of remainder estate).

¶17 Accordingly, we affirm the District Court's conclusion that the 2015 document is a valid holographic will under Montana law, but only insofar as it appoints Barlow as personal representative. Whether the document also disposed of property or created a power of appointment or trust requires separate analysis under § 72-7-201, MCA, as discussed below. Even if Corbin wished his sister to manage his property for his children's benefit, that desire cannot substitute for statutory compliance. Intent to benefit others must be expressed through legally effective dispositive language within the instrument itself.

¶18 *2. Did the 2015 document effectively dispose of Corbin's estate by creating a power of appointment or a trust?*

¶19 The parties vigorously dispute whether the 2015 holographic will effectively disposed of Corbin's estate. Nicolette contends that it did not, and therefore Corbin's estate must pass by intestacy under § 72-2-111(1), MCA.[4] Barlow counters that the will disposed of the estate by creating in her a power of appointment over estate assets, as evidenced in the writing itself and through Makinen's testimony that Corbin intended his children "to

---

[4] "Any part of a decedent's estate not effectively disposed of by will passes by intestate succession to the decedent's heirs." Section 72-2-111(1), MCA.

benefit from a trust-type fund." Nicolette responds that the will did not create a trust or a power of appointment under § 72-7-201, MCA, because it transferred no property and identified no permissible appointees.

### A. The 2015 Will Does Not Create a Trust

¶20 As a preliminary matter, we agree with Nicolette that the 2015 will does not create a trust under Montana law. A trust may be created "by transfer of property to a person as trustee" under a will, § 72-38-401(1), MCA, but only if the settlor (1) has capacity; (2) intends to create the trust; (3) identifies a definite beneficiary;[5] (4) imposes enforceable duties on a trustee; and (5) does not name the same person as the sole trustee and sole beneficiary. Section 72-38-402(1), MCA. Importantly, "[t]he primary inquiry when construing an expression is whether the testator intended only to advise or influence the devisee's discretion, or to control or direct the disposition intended." *In re Charles M. Bair Family Trust*, 2008 MT 144, ¶ 35, 343 Mont. 138, 183 P.3d 61 (punctuation omitted). Finally, trusts, whether express or implied, "must be established by evidence, which is clear, convincing, and practically free from doubt." *Eckart v. Hubbard*, 184 Mont. 320, 324, 620 P.2d 988, 990-91 (1979).

¶21 Here, no language in the 2015 writing expresses Corbin's intent to create a trust or to fund one with estate property at his death. Corbin did not identify Barlow—whom he named only as "executor"—as trustee, and Corbin did not impose duties other than to distribute assets at Barlow's "discretion." The phrase "I would like it to be up to her

---

[5] Section 72-38-402(2), MCA, provides that "[a] beneficiary is definite if the beneficiary can be ascertained now or in the future."

9

discretion" is precatory, not mandatory, and therefore does not impose enforceable fiduciary duties. *In re Estate of Bolinger*, 284 Mont. 114, 123, 943 P.2d 981, 986 (1997) (wishful or advisory expressions do not create fiduciary duties or a trust). Also, critically absent from the 2015 will is any identifiable "definite beneficiary." The document provides that Barlow may disburse "cash and or assets," but does not say to whom. Makinen's testimony that Corbin wanted to set up a trust-type fund for his children for access decades later is insufficient to supply intent where it is clearly absent on the face of the writing. *See Kuralt I*, ¶¶ 30-32. Accordingly, the document fails to meet the clear and convincing standard for creation of a trust under § 72-38-402, MCA.

**B. The 2015 Will Does Not Create a Power of Appointment**

¶22 Montana's Uniform Powers of Appointment Act (MUPAA), Title 72, chapter 7, MCA, governs creation of donative powers.[6] Because the Legislature codified this area of the law in 2015, courts must apply the statutes' explicit elements rather than common-law flexibility. A "power of appointment" is "a power that enables a powerholder acting in a nonfiduciary capacity to designate a recipient of an ownership interest in or another power of appointment over the appointive property." Section 72-7-102(13), MCA. Under § 72-7-201(1), MCA, a power of appointment is created "*only if*": (1) the instrument creating the power is valid under applicable law; (2) it transfers the appointive property; and (3) its terms manifest the donor's intent to create a power exercisable in favor of a

---

[6] The MUPAA is modelled after the Uniform Law Commission's Uniform Powers of Appointment Act (Unif. L. Comm'n 2013); in enacting the MUPAA, our Legislature also adopted the Uniform Law Commission's official comments to the Uniform Powers of Appointment Act.

permissible appointee. Section 72-7-201(1), MCA (emphasis added).[7] These requirements mean that a valid power must identify a donor, a powerholder, the appointive property, and one or more permissible appointees. *See* § 72-7-102, MCA (MUPAA defined terms).[8] Absent any of these elements, no donative power exists.

¶23 Here, the District Court relied on *Lanham v. Fleenor*, 429 P.3d 1231 (Idaho 2018), and *In re Estate of Rosen*, 23 N.E.3d 116 (Mass. App. Ct. 2014), to conclude that the 2015 document created a power of appointment. Neither case controls. Neither jurisdiction has adopted the Uniform Powers of Appointment Act or a statutory equivalent to § 72-7-201, MCA.[9] Both decisions rested on common law flexibility that Montana's codification was designed to replace. In contrast, Montana's statutes require specific identification of appointive property and permissible appointees, which are absent here. *Compare Lanham*, 429 P.3d at 1237-38; *Rosen*, 23 N.E.3d at 121-22.

¶24 We, instead, look to § 72-7-201, MCA, to determine whether the 2015 writing created a valid power of appointment. Again, under § 72-7-201, MCA, a power of appointment exists only if the instrument (1) is valid under applicable law, (2) transfers the

---

[7] *But see* § 72-7-201(2), MCA (the valid instrument requirement does not apply in cases where "the exercise of a power of appointment" creates another power of appointment).

[8] *Accord* § 72-7-201, MCA, Official Comments; 62 Am. Jur. 2d Powers of Appointment & Alienation, §§ 31 and 33 (2025) ("[t]o create a valid power of appointment, the donor must intend to create a power, indicate by whom the power is held, . . . specify the property over which the power is to be exercised" and "the object or objects to be benefited by execution of the power [must] be specified or clearly ascertainable").

[9] See the Uniform Law Commission's Uniform Powers of Appointment Act Enactment History at https://www.uniformlaws.org/committees/community-home?CommunityKey=70faefab-5c3d-4146-a51b-9b0a5b1f490d (last accessed Nov. 5, 2025).

appointive property, and (3) manifests the donor's intent to create in a powerholder a power exercisable in favor of a permissible appointee. Here, the 2015 holographic will does not transfer any estate property to Barlow and does not identify or describe any permissible appointees. For these reasons, the instrument fails to create a valid power of appointment under § 72-7-201, MCA.

### (1) The 2015 Will is a Valid Instrument

¶25 As explained above, the 2015 document meets the formal requirements for a valid holographic will under §§ 72-2-521 and -522, MCA, and manifests Corbin's intent that it serve as his will. Accordingly, it qualifies as a valid instrument under § 72-7-201(1)(a)(i), MCA.

### (2) The Will Did Not Effectively Transfer Any Appointive Property

¶26 The 2015 will did not transfer any estate property to Barlow. Corbin merely named Barlow as "executor" and asked that she "oversee *the disbursement*" of funds, including his investments, pensions, life insurance policies, cash, and assets. *See* § 72-1-103(37), MCA (personal representative "includes executor [or] administrator"). Disbursement means the act of paying out money, not a transfer of ownership.[10] Language permitting Barlow to take discretionary "maintenance fees" reinforces that she was to serve as personal representative, not as beneficiary or donee of a power.[11]

---

[10] *See Disbursement*, Webster's Third New International Dictionary, Unabridged (2021).
[11] *See* § 72-3-631, MCA ("[a] personal representative is entitled to reasonable compensation for services," but "also may renounce the right to all or any part of the compensation").

12

¶27 More problematic, the will specifically referenced "pensions" and "life insurance policies," which are nonprobate transfers payable to designated beneficiaries and cannot be distributed under a will. *See* § 72-6-111(1), MCA (nonprobate transfers upon death). Also, the will does not mention numerous real properties Corbin owned throughout Montana, further undermining any intent to transfer ownership. Even if phrases like "cash and or assets" were construed broadly to encompass the whole estate, including Corbin's portfolio of rental properties, language indicating that Barlow may decide how and when to "divide and disburse" these assets is insufficient to transfer ownership of them to Barlow; the language merely authorizes her to manage disbursement as a personal representative. On its face, the 2015 holographic will fails to satisfy the requirement of § 72-7-201(1)(a)(ii), MCA, to "transfer[] the appointive property."

**(3) The Will Did Not Identify Any Ascertainable Permissible Appointee**

¶28 Section 72-7-201(1)(b), MCA, requires that the instrument manifest the donor's intent to create a power "exercisable in favor of a permissible appointee." Permissible appointees are those "in whose favor a powerholder may exercise a power of appointment." Section 72-7-102(11), MCA. "A power of appointment is not created if the permissible appointees are so indefinite that it is impossible to identify any person to whom the powerholder can appoint." Section 72-7-201, MCA, Official Comments.[12] Basically, a

---

[12] *Accord* 62 Am. Jur. 2d §§ 31 and 33, which provide that, "[t]o create a valid power, either beneficial or in trust, it is indispensable that the object or objects to be benefited by its execution be specified in or be clearly ascertainable from the instrument by which the power is attempted to be created." Therefore, "a will fails to create a valid power of appointment where the language identifying the potential beneficiaries is not clearly ascertainable and the class of potential beneficiaries is not reasonably identifiable."

permissible appointee is someone identifiable as a potential recipient of appointive property.

¶29 Here, the 2015 holographic will does not describe, much less identify, any "permissible appointees" because it identifies no person or class of persons to receive Corbin's assets. It permits Barlow to divide and distribute cash and or assets at her discretion but does not say to whom she may disburse them. Without at least one ascertainable appointee, no power of appointment is created. Therefore, the will fails to satisfy the requirement of § 72-7-201(1)(b), MCA, of at least one identifiable, ascertainable "permissible appointee."

¶30 Accordingly, although the 2015 writing is a valid instrument under Montana law, it fails to transfer any appointive property or to identify any permissible appointee. It therefore fails to satisfy all required elements for creation of a valid power of appointment under § 72-7-201, MCA, and no donative power was created. Barlow's argument that the will granted her a "general power of appointment" exercisable in her favor as a permissible appointee is unavailing.[13] A court cannot construe the scope of a power until a power first exists. We therefore reverse the District Court's conclusion that the 2015 holographic will created a power of appointment in Barlow under § 72-7-201, MCA, and hold that it did not effectively dispose of Corbin's estate property.

---

[13] *See* § 72-7-102(6), MCA (a "general power of appointment" is "exercisable in favor of the powerholder, the powerholder's estate, a creditor of the powerholder, or a creditor of the powerholder's estate").

**CONCLUSION**

¶31 We affirm the District Court's determination that the December 9, 2015 writing meets the formal requirements of a valid holographic will for the limited purpose of appointing Barlow as personal representative. We reverse its conclusion that the writing created a power of appointment or otherwise disposed of property. Because the 2015 holographic will did not create a power of appointment or trust, it did not effectively dispose of Corbin's estate. Therefore, the undisposed portion of the estate must pass under the intestacy provisions of Title 72, chapter 2, part 1, MCA. Because Corbin left no surviving spouse, his estate passes to his descendants by representation. Section 72-2-113(1)(a), MCA.

¶32 Accordingly, we remand for entry of an order of partial intestacy under § 72-3-315, MCA, and for administration of the estate pursuant to the intestate succession provisions of Title 72, chapter 2, MCA. On remand, Barlow, as court-appointed personal representative, shall continue to administer the estate in accordance with the intestate succession provisions of Montana's Uniform Probate Code and this opinion.

/S/ KATHERINE M. BIDEGARAY

We Concur:

/S/ CORY J. SWANSON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE